911 P.2d 721

William LEE and Susan Lee,
Plaintiffs–Appellants,

v.

Cecil HEFTEL, Joyce Heftel, Richard Heftel, Conley Dew, Ltd., Herbert Conley, Jr., Barbara Dew, Eloise Conley, Yumi Laney, Mickey Patterson, Defendants–Appellees,

and

John Does 1 to 10, Doe Corporations 1 to 10, Doe Entities 1 to 10, Defendants.

No. 16791.

Supreme Court of Hawai'i.

Feb. 14, 1996.

Ronald G.S. Au, Connie G.W. Meredith, on the briefs, Honolulu, for Plaintiffs–Appellants.

James T. Paul, Robyn B. Chun of Paul, Johnson, Park & Niles, on the briefs, Honolulu, for Defendants–Appellees Cecil Heftel, Joyce Heftel and Richard Heftel.

Douglas T.Y. Lee, Arthur H. Kuwahara, Lee, Kim, Wong, Yee & Lau, on the briefs, Honolulu, for Defendants–Appellees Conley Dew, Ltd., Herbert Conley, Jr., Barbara

**2**

Dew, Eloise Conley, Yumi Laney and Mickey Patterson.

Before MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ. and Circuit Judge SOONG, in place of KLEIN, J., recused.

NAKAYAMA, Justice.

Plaintiffs-appellants William Lee and Susan Lee (collectively, "the Lees") appeal from the circuit court's order granting defendants-appellees Cecil Heftel, Joyce Heftel, and Richard Heftel's (collectively, "the Heftels") "motion to dismiss or in the alternative, to stay action pending mediation/arbitration" (motion to stay).[1] On appeal, the Lees contend that the circuit court erred in staying the action pending arbitration because "fraud in the inducement of a real estate contract is a 'ground as exists for revocation of a contract' so that the contract's arbitration clause is not enforceable."[2] For the following reasons, we disagree with the Lees' contention and affirm the order of the circuit court.

## I. BACKGROUND

In May 1990, the Lees purchased a home from Cecil and Joyce Heftel for the purchase price of $3,100,000.00. Richard Heftel was the attorney-in-fact for Cecil and Joyce Heftel. Conley Dew represented the Heftels as their sales agents.

On May 23, 1990, the parties executed a Deposit Receipt, Offer and Acceptance (DROA) contract, including Addenda Nos. 1 through 7, for the sale of the aforementioned residential property. Paragraph 5.3 of the DROA's Addendum No. 1 provides:

*Mediation and Arbitration.* If any dispute or claim in law or equity arises out of this DROA, Buyer and Seller agree in good faith to attempt to settle such dispute or claim by mediation under the Commer-

cial Mediation rules of the American Arbitration Association. If such mediation is not successful in resolving such dispute or claim, then such dispute or claim shall be decided by neutral binding arbitration before a single arbitrator in accordance with the Commercial Arbitration rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

Any dispute or claim by or against any REALTOR and/or real estate licensee participating in this sale shall be submitted to mediation followed by binding arbitration consistent with the above provisions.

On July 7, 1992, the Lees filed a complaint in circuit court alleging, *inter alia,* intentional or negligent misrepresentation, fraudulent concealment, breach of warranty, dual agency, and malicious and wanton conduct. The Lees also attached a demand for jury trial to the complaint.

On September 1, 1992, the Heftels filed their motion to stay and, in their attached memorandum, contended that the DROA expressly provided that " 'any dispute or claim in law or equity' must first be submitted to mediation and then, if necessary, binding arbitration under the rules of the American Arbitration Association." The Lees opposed said motion and argued that, "when a [p]laintiff seeks 'revocation' of a contract, [Hawai'i Revised Statutes (HRS) § 658–1, *supra,*] expressly provides that an arbitration clause will not be enforced." (Emphasis in original.)

On November 10, 1992, the Heftels' motion to stay was argued in circuit court. On January 6, 1993, the circuit court filed its order granting the Heftels' motion to stay. The circuit court concluded that:

The entire action is stayed and referred to arbitration. The essential nature of [the

---

1. On October 2, 1992, defendants-appellees Conley Dew, Ltd., Herbert Conley, Jr., Barbara Dew, Eloise Conley, Yumi Laney and Mickey Patterson (collectively, Conley Dew) filed a joinder in the Heftels' September 1, 1992 motion to stay.

2. The Lees also contend that the circuit court erred in concluding that the allegations of fraud were "secondary" issues. We agree with the

Lees that the allegations of fraud were not secondary; however, the error was either harmless or indicates that the circuit court reached the right result for the wrong reason. *State v. Propios,* 76 Hawai'i 474, 486, 879 P.2d 1057, 1069 (1994); *State v. Taniguchi,* 72 Haw. 235, 240, 815 P.2d 24, 26 (1991).

Lees'] Complaint states actions in breach of warranty and in breach of contract seeking general, special and punitive damages. Issues of fraud in making the contract and recision are secondary to [the Lees'] main claims. Therefore, the exception set forth in [HRS] § 658–1 does not apply; the legislature could not have intended that the policy favoring arbitration could be so easily circumvented.

The Lees' subsequently filed a timely notice of appeal.

## II. *DISCUSSION*

■ In reviewing the circuit court's order compelling the parties to arbitrate their disputes, as long as the existence of a valid agreement to arbitrate is not at issue, we review it as a question of law and apply the *de novo* standard. *Koolau Radiology, Inc. v. Queen's Medical Center*, 73 Haw. 433, 439, 834 P.2d 1294, 1298 (1992). Because there was no controversy as to the *existence* of an arbitration clause in this case, but, rather, whether the arbitration clause should be strictly followed, we apply the *de novo* standard for reviewing the circuit court's order granting the Heftels' motion to stay the proceedings pending arbitration. *Id.* at 439–40, 834 P.2d at 1298.

■ "[W]hen presented with a motion to compel arbitration, the court is limited to answering two questions: (1) whether an arbitration agreement exists between the parties; and (2) if so, whether the subject matter of the dispute is arbitrable under such agreement." *Koolau*, 73 Haw. at 445, 834 P.2d at 1300. In this case, there is no dispute between the parties as to the existence of the arbitration clause provided in Addendum No. 1, paragraph 5.3 of the DROA. Rather, the controversy exists as to the de-

termination of the second prong of the two-part test. The Lees argue that, because they were fraudulently induced into purchasing the transferred property, mere allegations of such fraud revoke the contract, including, under HRS § 658–1 (1993),[3] the arbitration clause.

For guidance in determining whether the subject matter of a dispute is arbitrable, we have previously stated that, because:

> the pertinent language of HRS § 658–3 is virtually identical to the language of the federal arbitration statute, 9 U.S.C. § 4, and [ ] due to the absence of [Hawai'i] law regarding the scope of the trial court's role when faced with a motion to compel arbitration, we look to federal authority for guidance.

*Koolau*, 73 Haw. at 444, 834 P.2d at 1300. In the present case, we focus on HRS § 658–1 rather than HRS § 658–3; however, because HRS § 658–1 is virtually identical to 9 U.S.C. § 2,[4] and due to the lack of Hawai'i case law on point, we apply *Koolau's* rationale to the present case, and look to federal authority for guidance.

In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the United States Supreme Court heard a case involving circumstances analogous to those in the present case. The contract in *Prima Paint*, as in the present case, contained an arbitration clause, providing that, "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration." *Id.* at 398, 87 S.Ct. at 1803. One party in that case alleged that the other had committed fraud in the inducement of the contract, although not of the arbitration clause in particular, and sought to have the

---

3. HRS § 658–1 (1993) provides:

**Agreement to submit.** A provision in a written contract to settle by arbitration a controversy thereafter arising out of the contract or the refusal to perform the whole or any part thereof, or an agreement in writing to submit an existing controversy to arbitration pursuant to section 658–2, shall be valid, enforceable, and irrevocable, save only upon such grounds as exist for the revocation of any contract.

4. 9 U.S.C. § 2 provides in relevant part:

A written provision in any ... contract ... to settle by arbitration a controversy thereafter arising out of such contract ..., or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, ... or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

4

claim of fraud adjudicated in court. The Supreme Court held that, notwithstanding a contrary state rule, consideration of a claim of fraud in the inducement of a contract "is for the arbitrators and not the courts," 388 U.S. at 400, 87 S.Ct. at 1803. *See Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But, the statutory language [of the Federal Arbitration Act, 9 U.S.C. §§ 1–14] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that in passing upon a[n] application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1139–40 (9th Cir.1991) (quoting *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. at 1805–06 (footnote omitted)).

■ Thus, absent a state law to the contrary, arbitration clauses are *separable* from the contracts in which they are embedded, and where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud. *Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806.

■ Like *Prima Paint*, no claim has been advanced by the Lees that the Heftels and Conley Dew fraudulently induced them to enter into the agreement to arbitrate "any controversy or claim arising out of or relating to this agreement, or the breach thereof." *Prima Paint*, 388 at 406, 87 S.Ct. at 1807. Additionally, there is no Hawai'i statute contrary to the holding in *Prima Paint*. *See Koolau*, 73 Haw. at 444, 834 P.2d at 1300. Thus, because the Lees' general allegations were based on fraud in the inducement of the contract as a whole, rather than fraud in the inducement of the arbitration clause, we hold that the claim should be decided first by

mediation, and then, if necessary, by arbitration, in accordance with the terms of the DROA contract.

■ In reaching this conclusion, we emphasize the importance of utilizing alternative methods of dispute resolution in an effort to reduce the growing number of cases that crowd our courts each year. "This court has long recognized the strong public policy supporting Hawai'i's arbitration statutes as codified in HRS Chapter 658. We have stated that '[t]he proclaimed public policy ... is to encourage arbitration as a means of settling differences and thereby avoiding litigation.'" *Bateman Construction, Inc. v. Haitsuka Brothers, Ltd.*, 77 Hawai'i 481, 484, 889 P.2d 58, 61 (1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) "[A]s with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). "The preeminent concern of Congress in passing the [Federal Arbitration] Act was to enforce private agreements into which parties had entered, [a concern which] requires that we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

Enforcing an agreement to arbitrate will have no detrimental effect on the disposition of the case.

By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

*Mitsubishi Motors*, 473 U.S. at 628, 105 S.Ct. at 3354 (citations omitted). Accordingly, we hold that the circuit court did not err in

granting the Heftels' motion to stay the proceeding pending arbitration.

### III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's order granting the Heftels' motion to stay the proceedings pending arbitration.