322 P.3d 966

**HAWAII STATE TEACHERS ASSOCIATION, Petitioner/Union–Appellant,**

v.

**UNIVERSITY LABORATORY SCHOOL; Education Laboratory Public Charter School Local School Board, Respondent/Employer–Appellee.**

No. SCWC–12–0000295.

Supreme Court of Hawaiʻi.

Feb. 27, 2014.

Rebecca L. Covert, Honolulu (Herbert R. Takahashi, Honolulu, and Davina W. Lam with her on the briefs), for petitioner.

Richard H. Thomason (James E. Halvorson, Honolulu, with him on the briefs), for respondent.

NAKAYAMA, McKENNA, and POLLACK, JJ., with RECKTENWALD, C.J., concurring separately, and ACOBA, J., concurring separately.

Opinion of the Court by NAKAYAMA, J.

This case concerns a dispute over whether agreements between the Petitioner/Union–Appellant Hawaiʻi State Teachers Association (HSTA)[1] and the Respondent/Employer–Ap-

---

1. The HSTA is the bargaining representative of

teachers and other personnel of the State of

pellee University Laboratory School (ULS)[2] mandate arbitration of a grievance filed by the HSTA against the ULS. The HSTA's grievance alleged that the ULS refused to implement a step placement chart for a salary schedule agreed to in a supplemental agreement negotiated by the HSTA and the School Board. The ULS responded that the step placement chart the HSTA sought to enforce had never been agreed upon or incorporated into the agreement.

The HSTA filed, as a special proceeding in the Circuit Court of the First Circuit (circuit court), a motion to compel arbitration of its grievance. The circuit court denied the HSTA's motion to compel arbitration and the HSTA appealed to the Intermediate Court of Appeals (ICA). The ICA concluded that the Hawai'i Labor Relations Board (HLRB) had primary jurisdiction over the issues raised in the HSTA's grievance and that the HSTA's motion to compel arbitration was premature. We hold that because the parties agreed to leave questions of arbitrability to the arbitrator, our case law mandated that the circuit court grant the HSTA's motion to compel arbitration after concluding that an arbitration agreement existed.

## I. BACKGROUND

On June 30, 2009, the ULS was transferred from the University of Hawai'i College of Education at the University of Hawai'i at Manoa to the local school board as a public charter school. At that time, the ULS and the HSTA entered into a Memorandum of Agreement (MOA) that memorialized the collective bargaining agreement (Master Agreement) already in effect between the HSTA and the State of Hawai'i Board of Education. The parties agreed that the HSTA was thereafter the employees' bargaining representative and the ULS was the employer. The MOA also stipulated that the parties were subject to future supplemental agreements.

On June 21, 2010, the HSTA and the ULS signed a supplemental agreement (Supplemental Agreement) governing the salaries of the ULS's unit 5 employees. Appendix XIV of the Supplemental Agreement provided:

[A]n employee's appropriate salary placement designation (class and step) is made onto the unit 5 master agreement salary schedule. For step placement, parties shall use the attached chart (Exhibit 1) indicating negotiated step increments for unit 5 members.

(Emphasis added). To calculate a unit 5 teacher's salary, the salary schedule and the step placement chart from Exhibit 1 were required. However, no document entitled Exhibit 1 was attached to the Supplemental Agreement.

On October 29, 2010, during an ongoing inquiry into the proper step placement of certain ULS employees, the HSTA informed the ULS via email that "it was brought to [the HSTA's] attention that [it] had inadvertently omitted 'Exhibit 1' for Appendix XIV." The HSTA attached a document to its email that was purportedly the "inadvertently omitted" Exhibit 1 and it instructed the ULS that this document "should be included as part [of] the [S]upplemental [A]greement."

On November 9, 2010, the ULS denied having agreed to the terms of the purported "Exhibit 1," stating that, although it recalled the chart in the document, "[a]t no time during the negotiations did [ULS] assume that [it] would be following that [chart] in setting [teachers'] salaries." The ULS had assumed that a different chart used during subsequent negotiations was the "missing Exhibit 1" and it had used that other chart when calculating teachers' salaries.

On April 13, 2011, pursuant to Article V of the Supplemental Agreement[3], the HSTA filed a grievance alleging that Appendix XIV and Exhibit 1 were bargained for in good faith and that the ULS "refused to imple-

---

Hawai'i Department of Education.

**2.** The ULS is also known as the Local School Board of the Education Laboratory Public Charter School or as the Education Laboratory Public Charter School Local School Board.

**3.** Article V of both the Supplemental Agreement and the Master Agreement contain identical provisions regarding grievances whereby the parties assented to submit unresolved claims to arbitration and to leave questions of arbitrability to the arbitrator.

ment the proper salary placement for teachers, thereby, repudiating Appendix XIV of the supplemental agreement." Then, on April 21, 2011, the HSTA notified the ULS that it wished to proceed to arbitration.

The ULS contested HSTA's request for arbitration and responded by filing a prohibited practice complaint with the HLRB on April 28, 2011. In its complaint, the ULS alleged that the HSTA refused to bargain in good faith and to comply with the terms of the Supplemental Agreement, in violation of Hawai'i Revised Statutes (HRS) §§ 89-13(b)(1), (2), (4), and (5) (Supp.2010).[4] Furthermore, the ULS alleged that the HSTA violated HRS § 89-10.8(a)(1) (Supp.2010)[5] by attempting to use the grievance process to alter the Supplemental Agreement.

Before the HLRB, the HSTA filed a motion on May 12, 2011 to dismiss the ULS's complaint and the ULS filed a motion on July 13, 2011 to stay all arbitration proceedings. At a hearing on August 12, 2011, the HLRB denied the motion to dismiss the complaint and took the motion to stay arbitration under advisement.[6]

Due to the ULS's continued refusal to enter arbitration, on August 3, 2011, the HSTA filed a motion in a special proceeding in the circuit court to compel arbitration of its grievance pursuant to HRS § 658A-7 (Supp.2010).[7] The circuit court denied HSTA's motion to compel arbitration by order of March 2, 2012.[8] The circuit court did not provide an explanation of its reasoning in denying the motion, although it noted during argument on the motion that this case raised novel issues regarding the jurisdiction of the HLRB.

The HSTA appealed the circuit court's March 2, 2012 order, and March 28, 2012 final judgment, to the ICA. In its opening brief, the HSTA argued that the circuit court had jurisdiction over the agreement and that the HSTA fulfilled the conditions to compel arbitration. In response, the ULS argued that the matter was unripe for adjudication and that the HLRB had original jurisdiction over the dispute.

On April 15, 2013, the ICA issued its opinion concluding that the circuit court did not err in denying HSTA's motion to compel

---

4. HRS § 89-13(b) provided then, as it does now, in pertinent part:

    It shall be a prohibited practice for a public employee or for an employee organization or its designated agent wilfully to:
    (1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;
    (2) Refuse to bargain collectively in good faith with the public employer, if it is an exclusive representative, as required in section 89-9;
    . . . .
    (4) Refuse or fail to comply with any provision of this chapter; or
    (5) Violate the terms of a collective bargaining agreement.

5. HRS § 89-10.8(a)(1) provided then, as it does now: "A dispute over the terms of an initial or renewed agreement shall not constitute a grievance."

6. After almost two years of no action from the HLRB, on July 23, 2013, the ULS filed a motion for partial summary judgment on its complaint. On August 14, 2013, the HSTA filed a motion to stay proceedings before the HLRB until this court's review was completed. By order of November 5, 2013, the HLRB granted in part the ULS's motion for partial summary judgment and denied the HSTA's motion to stay the proceedings before the HLRB pending this court's re-

view of this case. The HLRB also granted the ULS's July 13, 2011 motion to stay the arbitration proceedings.

    The HLRB's order is not ripe for review by this court and has no bearing upon our resolution of this case. However, we note that the HLRB cites to no statutory or legal authority granting it the authority to stay a pending arbitration proceeding or a court's review of a motion to compel arbitration. The HLRB's powers derive from and are limited by HRS chapter 89. No provisions in HRS chapter 89 grant the HLRB the power to stay proceedings before any other body. Therefore, the HLRB's purported stay of the arbitration proceedings is of no legal effect.

7. HRS § 658A-7 provided then, as it does now, in pertinent part:

    (a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
      (1) If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and
      (2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

8. The Honorable Patrick W. Border presided.

arbitration. *Haw. State Teachers Ass'n v. Univ. Lab. School, Educ. Lab. Pub. Charter School Local School Bd. (HSTA v. ULS)*, No. CAAP–12–0000295, 2013 WL 1578338 at *1, *4 (App. Apr. 15, 2013). Referencing the probability of conflicting or redundant results, the ICA reasoned that denying the motion was proper because HSTA's motion implicated technical and policy issues over which the HLRB had primary jurisdiction.[9] *Id.* at *4.

On July 16, 2013, the HSTA timely filed an application for writ of certiorari to this court in which it contended that the ICA erred in applying the doctrine of primary jurisdiction and in affirming the circuit court's denial of HSTA's motion to compel arbitration. We accepted certiorari on August 28, 2013, and held oral argument on October 17, 2013.

## II. STANDARD OF REVIEW

### A. Petition to Compel Arbitration

■ We review a petition to compel arbitration *de novo. Douglass v. Pflueger Hawai'i, Inc.*, 110 Hawai'i 520, 524, 135 P.3d 129, 133 (2006). "The standard is the same as that which would be applicable to a motion for summary judgment, and the trial court's decision is reviewed 'using the same standard employed by the trial court and based upon the same evidentiary materials as were before [it] in determination of the motion.' " *Id.* at 524–25, 135 P.3d at 133–34 (alterations in original) (quoting *Koolau Radiology, Inc. v. Queen's Med. Ctr.*, 73 Haw. 433, 439–40, 834 P.2d 1294, 1298 (1992)).

## III. DISCUSSION

### A. Parties may reserve questions of arbitrability for the arbitrator

This court has repeatedly acknowledged the general enforceability of arbitration agreements. *See, e.g., Douglass,* 110 Hawai'i at 530, 135 P.3d at 139; *Luke v. Gentry Realty, Ltd.,* 105 Hawai'i 241, 247, 96 P.3d

261, 267 (2004); *Brown v. KFC Nat'l Mgmt. Co.,* 82 Hawai'i 226, 232, 921 P.2d 146, 152 (1996). The Uniform Arbitration Act, adopted in Hawai'i in 2001 and codified at HRS chapter 658A, provides that when a court has "jurisdiction over the controversy and the parties[, it] may enforce an agreement to arbitrate." HRS § 658A–26 (Supp. 2010). An arbitration agreement is "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." HRS § 658A–6(a) (Supp.2010).

■ Our statutes have delineated the roles of courts and arbitrators in enforcing arbitration agreements; "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate" and "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." HRS §§ 658A–6(b)–(c). "When presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so whether the subject matter of the dispute is arbitrable under such agreement." *Koolau,* 73 Haw. at 445, 834 P.2d at 1300. The second prong of this rule—"whether the subject matter of the dispute lies within the arbitrator's jurisdiction"—is termed the "arbitrability" of the dispute. *Hokama v. Univ. of Haw.,* 92 Hawai'i 268, 274 n. 6, 990 P.2d 1150, 1156 n. 6 (1999).

■ We have modified this general rule for cases in which the parties have agreed to leave questions of arbitrability to the arbitrator. *See Bateman Constr., Inc. v. Haitsuka Bros., Ltd.,* 77 Hawai'i 481, 485, 889 P.2d 58, 62 (1995) ("[T]he question of arbitrability is usually an issue to be decided by the courts, 'unless the parties clearly and unmistakably provide otherwise.' ") (alterations omitted) (quoting *FSC Sec. Corp. v. Freel,* 14 F.3d

---

9. Rather than affirming the circuit court's order, the ICA vacated the order and remanded the case with instructions to consider whether a stay or dismissal without prejudice would be appropriate. *HSTA v. ULS,* 2013 WL 1578338 at *4. The ICA reasoned that under the primary jurisdiction

doctrine, without a finding that the parties would not be "unfairly disadvantaged" by a dismissal, the circuit court was required to stay the proceedings. *Id.* (emphasis omitted) (quoting *Pavsek v. Sandvold,* 127 Hawai'i 390, 402, 279 P.3d 55, 67 (App.2012)).

1310, 1312 (8th Cir.1994)). Where the parties have "clearly and unmistakably" reserved the issue of arbitrability for the arbitrator, courts lack the authority to rule upon this issue because "[a]fter all, 'it was the arbitrator's judgment [the parties] had bargained for, not a court's.'" *Id.* (alterations omitted) (quoting *Morrison–Knudsen Co. v. Makahuena Corp.,* 66 Haw. 663, 670, 675 P.2d 760, 766 (1983)); *see also Bronster v. United Public Workers, Local 646,* 90 Hawai'i 9, 14–16, 975 P.2d 766, 771–73 (1999) ("[P]arties are free to agree among themselves to vest sole authority in an arbitrator to determine the issue of the arbitrability of a particular subject matter so long as they do so 'clearly and unmistakably.'" (quoting *Bateman Constr., Inc.,* 77 Hawai'i at 485, 889 P.2d at 62)). "Parties may contractually excise the court from the determination" of whether the dispute is arbitrable and, in these cases, the court may only consider whether there is a valid agreement to arbitrate. *Bronster,* 90 Hawai'i at 15, 975 P.2d at 772; *see also In re United Public Workers, Local 646,* 124 Hawai'i 372, 378, 244 P.3d 609, 615 (2010) ("When agreements reserve questions of arbitrability for the arbitrator, as they do here, the court may only consider the first prong[—whether there is a valid agreement to arbitrate].")

### 1. The HSTA and the ULS contracted to leave questions of arbitrability to the arbitrator

■ The Master Agreement and the Supplemental Agreement contained identical provisions regarding the grievance process:

ARTICLE V—GRIEVANCE PROCEDURE

A. DEFINITION. Any claim by the [HSTA] or a teacher that there has been a violation, misinterpretation or misapplication of a specific term or terms of this Agreement shall be a grievance.

. . . .

H. ARBITRATION. If a claim made by the [HSTA] or teacher has not been satisfactorily resolved, the Association may present a request for arbitration of the grievance within ten (10) days after the receipt of the decision.

. . . .

e) If the Employer disputes the arbitrability of any grievance submitted to arbitration, the arbitrator shall first determine the question of arbitrability. If the arbitrator finds that it is not arbitrable, the grievance shall be referred back to the parties without decision or recommendation on its merits.

(Emphasis added). These provisions establish that the HSTA and the ULS agreed to arbitrate grievances and reserved questions of arbitrability for the arbitrator.

In *Bronster,* we interpreted similar arbitration provisions. In that case, Attorney General Bronster sought a declaration that the Office of the Attorney General was not subject to arbitration pursuant to an agreement between the State of Hawai'i and the United Public Workers Union (UPW). *Bronster,* 90 Hawai'i at 9–10, 975 P.2d at 766–67. The circuit court denied the UPW's motions to stay proceedings pending arbitration, to compel arbitration, and for summary judgment and granted Bronster's motion for summary judgment. *Id.* On appeal to this court, we first concluded that, "as a 'representative' or agent of the State, the Attorney General was a 'party' to the agreement." *Id.* at 10, 975 P.2d at 767. We then interpreted the arbitration provision in the agreement between the UPW and the State which provided: "[i]f the Employer disputes the arbitrability of any grievance under the terms of this Agreement, the Arbitrator shall first determine whether he has jurisdiction to act; and if he finds that he has no such power, the grievance shall be referred back to the parties without decision on its merits." *Id.* (alteration and emphasis in original). We reasoned that "[w]ithout question, here . . . the agreement calls 'clearly and unmistakably' for the arbitrator to decide the arbitrability of a grievance." *Id.* at 15, 975 P.2d at 772. While Attorney General Bronster contended that UPW failed to comply with certain provisions of the agreement in bringing its grievance, we characterized this as a question of arbitrability. We concluded that the issue of arbitrability had been "expressly reserved by the parties for determination by the arbitrator" and thus the circuit court

erred in addressing this question. *Id.* at 16, 975 P.2d at 773. We held that, because there was an arbitration agreement between the parties that reserved the question of arbitrability for the arbitrator, the circuit court erred in granting Bronster's motion for summary judgment and in denying UPW's motions for summary judgment and to compel arbitration. *Id.*

Here, it is uncontested that there was an arbitration agreement between the parties. Using similar language to that in *Bronster,* the agreement in the instant case "clearly and unmistakably" left the issue of arbitrability to the arbitrator. Therefore, because the question of whether there was a valid arbitration agreement between the parties was uncontested, the circuit court should have granted the HSTA's motion to compel arbitration.

### 2. The determination of whether a grievance exists is a question of arbitrability reserved for the arbitrator

■ The ULS contends that pursuant to the laws for "Collective Bargaining in Public Employment" codified in HRS chapter 89, this is a bargaining dispute and therefore it is not a grievance subject to the parties' arbitration agreement. HRS § 89–10.8 governs the "Resolution of disputes; grievances" and states: "A public employer shall enter into written agreement with the exclusive representative setting forth a grievance procedure culminating in a final and binding decision, to be invoked in the event of any dispute concerning the interpretation or application of a written agreement." This statute clarifies that "[a] dispute over the terms of an initial or renewed agreement" is not a grievance. HRS § 89–10.8(a)(1) (emphasis added). HRS § 89–11 (Supp.2010) governs the "Resolution of disputes; impasses" and states that parties may enter into an agreement establishing an "alternate impasse procedure" that may "be invoked in the event of an impasse over the terms of an initial or renewed agreement." (Emphasis added).

■ The ICA erred in stating that pursuant to the parties' agreements, and HRS § 89–10.8, the circuit court may only order arbitration after finding that a grievance exists. *HSTA v. ULS,* 2013 WL 1578338 at *3. It is immaterial whether this case involves a "grievance" or a "dispute over the terms of an initial or renewed agreement." "[A]s with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Lee v. Heftel,* 81 Hawai'i 1, 4, 911 P.2d 721, 724 (1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). We have previously classified the issue of whether claims fall within the scope of an arbitration clause to be a question of arbitrability. *See Haw. Med. Ass'n v. Haw. Med. Servs. Ass'n,* 113 Hawai'i 77, 92, 148 P.3d 1179, 1194 (2006) (discussing whether the disputes fall within the scope of the arbitration agreement as an issue of arbitrability); *see also Univ. of Haw. Prof'l Assembly v. Univ. of Haw.,* 66 Haw. 207, 210, 659 P.2d 717, 719 (1983) ("The arbitration process may only be used when the grievance involves the violation of a provision of the agreement. Thus the questions of arbitrability and whether the agreement is involved are one and the same.").

Here, the question of whether the HSTA's claim constitutes a grievance subject to the arbitration provisions of the Supplemental Agreement is a question of arbitrability. As discussed above, the HSTA and the ULS explicitly agreed to leave all questions of arbitrability to the arbitrator. Therefore, it was not necessary for the circuit court to determine whether HSTA's claim constituted a grievance before granting the motion to compel arbitration.

### B. The doctrine of primary jurisdiction does not apply

■ "The primary jurisdiction doctrine is designed to promote uniformity and consistency in the regulatory process." *Aged Hawaiians v. Hawaiian Homes Comm'n,* 78 Hawai'i 192, 202, 891 P.2d 279, 289 (1995) (quoting *United States v. Western Pac. R.R.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). This doctrine recognizes that " 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative dis-

cretion, agencies created by [the legislature] for regulating the subject matter should not be passed over.'" *Kona Old Hawaiian Trails Group v. Lyman,* 69 Haw. 81, 93, 734 P.2d 161, 169 (1987) (emphasis in original) (quoting *Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 96 L.Ed. 576 (1952)). "The primary jurisdiction doctrine applies to a claim that is originally cognizable in the courts but which requires the resolution of issues that are within the special competence of an administrative agency." *Fratinardo v. Emps.' Ret. Sys. of Haw.,* 121 Hawai'i 462, 468, 220 P.3d 1043, 1049 (App.2009) (quoting *Jou v. Nat'l Interstate Ins. Co. of Haw.,* 114 Hawai'i 122, 128–29, 157 P.3d 561, 567–68 (App.2007)).

▮ Here, the ICA concluded that the primary jurisdiction doctrine was applicable because the "HSTA's motion to compel arbitration implicat[ed] technical and policy issues" within the jurisdiction of the HLRB. *HSTA v. ULS,* 2013 WL 1578338 at *4. The ICA reasoned that "the issue which HSTA wishes to compel to arbitration is closely related to the issues raised in ULS's prohibited practice complaint" and the HLRB had "exclusive original jurisdiction" over the issues raised in the ULS's complaint. *HSTA v. ULS,* 2013 WL 1578338 at *3.

▮ The ICA need not have reached the issue of the HLRB's possible primary jurisdiction over this dispute. Before a court, or an arbitrator, can apply the doctrine of primary jurisdiction, it must first determine that it has jurisdiction over the dispute. *Fratinardo,* 121 Hawai'i at 468, 220 P.3d at 1049. As discussed above, the only issue before the circuit court was whether an arbitration agreement between the HSTA and the ULS existed. This issue was uncontested and, regardless, it did not implicate the expertise of the HLRB. Thus, the ICA erred in applying the doctrine of primary jurisdiction to conclude that the HSTA's motion to compel arbitration was premature.

## IV. CONCLUSION

Because, it is undisputed that the Master Agreement and the Supplemental Agreement contained arbitration clauses that 'clearly and unmistakably' reserved questions of arbitrability for determination by the arbitrator, the circuit court erred in failing to grant the HSTA's motion to compel arbitration. We therefore vacate the ICA's May 17, 2013 Judgment on Appeal filed pursuant to its April 15, 2013 opinion and remand this case to the circuit court for further proceedings.

Concurring opinion by RECKTENWALD, C.J.

I write separately to address the application of HRS § 89–10.8(a) to the circumstances of this case. As both *Univ. of Hawaii Prof'l Assembly v. Univ. of Hawaii* (hereinafter, *UHPA* ) and *Bronster v. United Pub. Workers, AFSCME, Local 646, AFL–CIO* acknowledge, arbitral jurisdiction can be overridden by a preclusive statute. *UHPA,* 66 Haw. 207, 212, 659 P.2d 717, 720 (1983) (concluding that § 89–9(d)(7) did not preclude arbitration "because we would require more direct language in a statute to allow it to take away the bargained-for remedy of arbitration") (emphasis added); *Bronster,* 90 Hawai'i 9, 14, 975 P.2d 766, 771 (1999) (discussing *UHPA* ). Although HRS § 89–10.8(a)(1) could preclude arbitral jurisdiction in certain situations, it is inapplicable here because the instant case does not involve the type of dispute that the provision was intended to exclude from "grievance" arbitration.

HRS § 89–10.8 addresses the "resolution of disputes" involving "grievances," and must be read in conjunction with HRS § 89–11, which addresses the "resolution of disputes" involving "impasses" in negotiations, i.e., when parties reach a point in the course of negotiations where they cannot agree on terms and become deadlocked. *See* HRS § 89–2 (defining "impasse" as the "failure of a public employer and an exclusive representative to achieve agreement in the course of collective bargaining") (emphasis added). Prior to 2000, the procedures for dealing with grievances and impasses were contained in the same provision, HRS § 89–11. *See* HRS § 89–11 (Supp.1999). However, in 2000, the legislature revised chapter 89. Although HRS § 89–11 continued to govern the resolution of impasses, a new section was added, HRS § 89–10.8, that governed dis-

putes involving grievances. In order to ensure that the processes set forth in the two provisions did not conflict, the legislature provided in HRS § 89–10.8(a)(1) that "[a] dispute over the terms of an initial or renewed agreement shall not constitute a grievance." *See* 2000 Haw. Sess. Laws Act 253, § 91 at 886. Consistent with that approach, HRS § 89–11 contains several references to impasses over "the terms of an initial or renewed agreement." Thus, when HRS § 89–10.8(a)(1) is read in light of HRS § 89–11, it becomes apparent that HRS § 89–10.8(a)(1) excludes such impasses from being a grievance in order to preclude deadlocked parties from circumventing the impasse procedures by characterizing their dispute as a grievance.

HRS § 89–10.8(a) does not preclude the filing of a grievance where parties, like those here, have negotiated and agreed to the Supplemental Agreement, but disagree about the interpretation or implementation of its terms. The fact that one of the parties suggests that a term of the Supplemental Agreement, specifically Exhibit 1, was not agreed upon is not a sufficient ground to remove this dispute from the grievance resolution procedures established by the parties pursuant to HRS § 89–10.8. Arbitrators commonly address issues of mutual and unilateral mistake involving otherwise complete collective bargaining agreements, *see* Frank Elkouri & Edna Asper Elkouri, *How Arbitration Works* 18–40 to 43 (Kenneth May ed., 7th ed. 2012), and there is nothing in HRS § 89–10.8(a)(1) that suggests the legislature intended that a dispute of this kind would not be "grist in the mills of the arbitrators." *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Accordingly, the dispute here was not the type of impasse that HRS § 89–10.8(a)(1) was intended to preclude from being characterized as a grievance. The statutory provisions therefore do not preclude arbitration in the instant case.

Concurring opinion by ACOBA, J.

First, I agree with the majority that the primary jurisdiction doctrine does not apply

in this case. *See Pacific Lightnet, Inc. v. Time Warner Telecom, Inc.*, 131 Haw. 257, 268, 318 P.3d 97, 108 (2013). Briefly, here, the applicability and interpretation of arbitration agreements is well " 'within the conventional experience of judges.' " *Id.* at 275, 318 P.3d at 115 (quoting *Far East Conference v. U.S.*, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952)). Further, "there is no indication that applying the primary jurisdiction doctrine would promote [ ] uniformity and consistency" "in [any] policy-making decisions that [an agency] must make." *Id.* at 276, 318 P.3d at 116. For, in the instant case, the question of whether the arbitration agreement should be enforced "does not require the exercise of administrative discretion, and furthermore, a result in this case would not impact the result in any other cases, inasmuch as the facts and circumstances are unique to these parties[.]" *Id.* at 278, 318 P.3d at 118.

Second, while the question of the applicability of Hawai'i Revised Statutes (HRS) § 89–10.8 to this case is not directly addressed, this court has long recognized the strong public policy supporting arbitration. *Cf. Lee v. Heftel*, 81 Hawai'i 1, 4, 911 P.2d 721, 724 (1996). In light of the parties' express agreement to have " 'the arbitrator . . . first determine the question of arbitrability[,]' " Majority Opinion at 12, it does not appear the agreement would contravene public policy. "The public policy exception to the general deference given to arbitration awards" is that "[a] court will not enforce any contract that is contrary to public policy." *Inlandboatmen's Union v. Sause Brothers*, 77 Hawai'i 187, 193–94, 881 P.2d 1255, 1261– 62 (1994) (internal quotation marks omitted). *Inlandboatmen's Union* adopted the test in [*United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ] in which the Supreme Court established that for application of the public policy exception, a court must determine that "(1) the [arbitration] award would violate some explicit public policy that is well defined and dominant, and that is ascertained by reference to the laws and legal precedents and not from general considerations of sup-

posed public interests, and (2) the violation of the public policy is clearly shown." *Id.* at 193–94, 881 P.2d at 1261–62 (internal quotation marks omitted). It does not appear on this record nor did any party argue that enforcement of the arbitration contract would contravene some "clearly shown" "well-defined and dominant public policy." Accordingly, I concur.