**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000376
14-MAY-2021
08:22 AM
Dkt. 55 MO**

NO. CAAP-19-0000376

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CLEOFE SUES, and all others
similarly situated, Plaintiff-Appellee, v.
NATIONAL DEBT RELIEF LLC, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC181-1563)

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, and Wadsworth and Nakasone, JJ.)

This appeal arises out of a dispute regarding a "Debt Negotiation Agreement" (**Agreement**) between Plaintiff-Appellee Cleofe Sues (**Sues**) and Defendant-Appellant National Debt Relief, LLC (**NDR**). NDR moved to compel arbitration of the dispute, pursuant to an arbitration provision contained in the Agreement. The Circuit Court of the First Circuit (**Circuit Court**) denied NDR's motion.[1] NDR appeals from the June 4, 2019 "Order Denying 'Defendant [NDR's] Motion to Compel Arbitration, to Stay Proceedings, or, in the Alternative, to Dismiss the Amended Class Action Complaint, Filed on January 8, 2019,' Filed March 13, 2019" (**Order Denying Arbitration**), entered in the Circuit Court.

On appeal, NDR contends that the Circuit Court erred in denying NDR's motion to compel arbitration. NDR asserts that in refusing to compel arbitration, the Circuit Court improperly addressed "the enforceability of the [Agreement] as a whole" rather than "the arbitration clause standing alone."

---

[1] The Honorable James C. McWhinnie presided.

Based on precedent by the United States Supreme Court and the Hawaiʻi Supreme Court, we conclude that the Circuit Court erred in denying NDR's motion to compel arbitration. We thus vacate the Order Denying Arbitration and remand with instructions to enter an order granting NDR's motion to compel arbitration.

## I. Background

On January 8, 2019, Sues filed an Amended Class Action Complaint (**Complaint**) alleging that NDR is a for-profit debt adjuster conducting business in Hawaiʻi in violation of Hawaii Revised Statutes (**HRS**) § 446-2 (2013 Repl.).[2] The Complaint alleges that Sues hired NDR as a debt adjuster to help her manage her debts with three creditors, and from January 30, 2017 to February 1, 2018, she deposited a certain amount with NDR each month to adjust her debts. The Complaint further alleges that only one of Sues's three accounts was settled by NDR, and when one of the remaining two creditors filed a lawsuit against Sues, NDR left her without assistance. The Complaint asserts that NDR "violated [HRS] § 446-2's prohibition against debt adjusting without proper exemption as identified under [HRS] § 446-3[,]" and "[t]herefore, [NDR] engaged in commercial conduct that violates public interest and constitutes a per se violation of [HRS] § 480-13."

NDR filed a motion to compel arbitration pursuant to the arbitration clause contained in the Agreement. That clause provides in part:

> In the event of any controversy, claim, or dispute between the parties arising out of or relating to this Agreement, the parties agree to resolve all issues solely through the use of Binding Arbitration, governed by the rules of the American Arbitration Association ("AAA"). . . . . The arbitrator or arbitration panel shall have the exclusive and

---

[2] HRS § 446-2 provides:

> **Debt adjusting prohibited; penalty; contracts void.** Any person who acts or offers to act as a debt adjuster in this State shall be fined not more than $500 or imprisoned not more than six months, or both. Any contract for debt adjusting entered into with a person engaged in the business for a profit shall be void and unenforceable and the debtor may recover from the debt adjuster all sums or things deposited with the debt adjuster and not disbursed to the debtor's creditors.

> sole authority to resolve any dispute relating to the interpretation, applicability, enforceability, conscionability or formation of this Agreement and of this arbitration requirement. . . .

In opposing the motion to compel arbitration, Sues argued that the Agreement is unenforceable and void pursuant to HRS § 446-2, and thus the arbitration clause contained in the Agreement cannot be enforced.  In reply, NDR argued that the validity of the Agreement as a whole and the validity of the arbitration clause must be considered separately, and that Sues failed to show that the arbitration clause is unenforceable.

The Circuit Court heard NDR's motion to compel arbitration on April 17, 2019.  After hearing argument from both sides, the court denied the motion, stating that "[HRS §] 446-2 makes it clear that any contract for debt adjusting entered into with a person engaged in the business for a profit shall be void and unenforceable[,]" and, therefore, the court "[cannot] find that there is an unenforceable agreement to arbitrate."  The court subsequently issued the Order Denying Arbitration.

## II.  Standard of Review

The standard for appellate review of a motion to compel arbitration is the same as a motion for summary judgment.  Koolau Radiology, Inc. v. Queen's Med. Ctr., 73 Haw. 433, 439-40, 834 P.2d 1294, 1298 (1992).  The appellate court reviews "the circuit court's grant or denial of summary judgment de novo."  Querubin v. Thronas, 107 Hawaiʻi 48, 56, 109 P.3d 689, 697 (2005) (quoting Hawaiʻi Cmty. Fed. Credit Union v. Keka, 94 Hawaiʻi 213, 221, 11 P.3d 1, 9 (2000)).  The de novo review is "based upon the same evidentiary materials as were before [the trial court] in determination of the motion."  Koolau Radiology, 73 Haw. at 440, 834 P.2d at 1298 (quoting Feliciano v. Waikiki Deep Water, Inc., 69 Haw. 605, 607, 752 P.2d 1076, 1078 (1988)) (internal quotation marks omitted).

## III. Discussion

NDR argues:  "It is undisputed that Sues entered into [the Agreement] with [NDR]," and the Agreement contains a "broad

arbitration clause[.]" According to NDR:

> When a Circuit Court is faced with a motion to compel arbitration in accordance with an arbitration clause in a contract, the Circuit Court is only permitted to consider two questions: whether the agreement to arbitrate contained within the contract is enforceable, and whether the claim is within the scope of the arbitration clause. Any claims regarding the validity of the entire contract may not be determined by the Circuit Court, but must be determined by the arbitrator if the agreement to arbitrate standing alone is enforceable.

Here, NDR contends, "it is undisputed that [Sues's] claims are within the scope of the arbitration clause[,]" so the only issue is whether the arbitration clause itself is enforceable. According to NDR, the Circuit Court erred in determining the validity of the Agreement as a whole rather than considering only the enforceability of the arbitration clause. NDR contends that as a matter of substantive federal arbitration law, which applies to this dispute involving interstate commerce, an arbitration provision is severable from the remainder of the contract, citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006), Southland Corp. v. Keating, 465 U.S. 1 (1984), Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 921 P.2d 146 (1996), and Lee v. Heftel, 81 Hawaiʻi 1, 911 P.2d 721 (1996). NDR concludes that, because "Sues presented no challenge to the arbitration clause standing alone[,]" that clause must be enforced.

Sues, on the other hand, starts with the proposition that "[a]rbitration is a matter of contract[,]" and "[i]f there is no contract, the court cannot order arbitration." Sues continues:

> [T]he issue of whether there is a valid and enforceable contract here has already been determined by the Hawaii legislature through legislation [*i.e.,* HRS § 446-2] that states that the contract upon which NDR relies is void. It does not leave it to courts (or an arbitrator) to decide under common law that a contract may eventually be declared void or voidable.

Here, Sues contends, the entire Agreement is void under HRS § 446-2. "[T]herefore[,] all of the provisions within it, including the arbitration provision cannot be severed out and enforced."

"When presented with a motion to compel arbitration, the court is limited to answering two questions:  1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement."[3/]  Brown, 82 Hawaiʻi at 238, 921 P.2d at 158 (quoting Koolau Radiology, 73 Haw. at 445, 834 P.2d at 1300) (brackets omitted).  Given Sues's arguments on appeal – that the entire Agreement is void and severance of the arbitration provision is not appropriate[4/] – our focus is on the first question, whether an arbitration agreement exists between the parties.

A court determines the validity and enforceability of an arbitration agreement based on three elements:  "(1) it must be in writing; (2) it must be unambiguous as to the intent to submit [the dispute] to arbitration; and (3) there must be bilateral consideration."  Gabriel v. Island Pacific Academy, Inc., 140 Hawaiʻi 325, 334, 400 P.3d 526, 535 (2017) (quoting Douglass v. Pflueger Hawaii, Inc., 110 Hawaiʻi 520, 531, 135 P.3d 129, 140 (2006)).

There is no dispute that the Gabriel elements are met in this case:  the arbitration provision is in writing, there is an unambiguous intent to submit the dispute to arbitration, and there is bilateral consideration.  The arbitration clause in the Agreement expressly states in part:  "In the event of any controversy, claim, or dispute between the parties arising out of or relating to this Agreement, the parties agree to resolve all issues solely through the use of Binding Arbitration, governed by the rules of the American Arbitration Association ("AAA")."

The crux of this appeal is whether HRS § 446-2, which voids "[a]ny contract for debt adjusting entered into with a

_____

[3/]     The Agreement here contains a choice of law provision stating that it "shall be governed by the law of the State of New York[.]"  In its opening brief, NDR relies primarily on federal and Hawaiʻi law, but also cites New York authority, as applicable, and notes that "[t]here are no material differences among federal, Hawaiʻi and New York law on the issues raised in this appeal."  Sues relies on federal and Hawaiʻi law. Under these circumstances, we apply federal (see infra note 5) and Hawaiʻi law, as applicable, in determining this appeal.

[4/]     Sues does not dispute that the subject matter of the Amended Complaint falls within the scope of the arbitration provision.

person engaged in the business for a profit," voids the arbitration provision in the Agreement.  Because Sues's argument is not a specific challenge to the validity of the arbitration provision, we conclude that under the prevailing case law, the Circuit Court erred in failing to sever and enforce the arbitration clause.

We recently discussed the prevailing case law in Inoue v. Harbor Legal Group, No. CAAP-19-0000589, 2021 WL 1700940, at *1 (Haw. App. Apr. 29, 2021) (Mem. Op.), where we affirmed the trial court's order compelling arbitration in similar circumstances.  There, we described the controlling precedent as follows:

> In Buckeye, the plaintiffs entered deferred-payment transactions with the defendant Buckeye Check Cashing, Inc., in which plaintiffs received cash in exchange for a personal check in the amount of the cash plus a finance charge.  For each transaction there was an agreement that contained an arbitration provision.  The plaintiffs filed a class action lawsuit in Florida state court "alleging that Buckeye charged usurious interest rates and that the Agreement violated various Florida lending and consumer-protection laws, rendering it criminal on its face."  546 U.S. at 443.  Buckeye sought to compel arbitration.  The trial court denied the motion to compel arbitration, the Florida court of appeal reversed, the Florida Supreme Court reversed the appellate court, and the case was accepted for review by the U.S. Supreme Court.  Id.
>
> The U.S. Supreme Court stated the issue before it as follows:  "We decide whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality."  Id. at 442.  The court first noted the application of the Federal Arbitration Act (FAA),[5] stating:
>
>> To overcome judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts:

---

[5]  As noted in Inoue:

> The FAA applies to written arbitration provisions in "any maritime transaction or a contract evidencing a transaction involving commerce[.]"  9 U.S.C. § 2 (1976). Thus, it "rests on the authority of Congress to enact substantive rules under the Commerce Clause[,]" and the substantive rules of the FAA apply in state and federal courts.  Southland Corp., 465 U.S. at 11, 12.

2021 WL 1700940, at *3 n.3.  As in Inoue, no party disputes that the FAA applies in this case.

"A written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Id. at 443-44.

The court then explained:

Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types. **One type** challenges specifically the validity of the agreement to arbitrate. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 4-5, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (challenging the agreement to arbitrate as void under California law insofar as it purported to cover claims brought under the state Franchise Investment Law). **The other** challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. Respondents' claim is of this second type. The crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), we addressed the question of who—court or arbitrator—decides these two types of challenges. The issue in the case was "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id.*, at 402, 87 S.Ct. 1801. Guided by § 4 of the FAA, we held that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.*, at 403-404, 87 S.Ct. 1801 (internal quotation marks and footnote omitted). We rejected the view that the question of "severability" was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court. See id., at 400, 402-403, 87 S.Ct. 1801.

Subsequently, in *Southland Corp.*, we held that the FAA "create[d] a body of federal substantive law," which was "applicable in state and federal courts." 465 U.S., at 12, 104 S.Ct. 852 (internal quotation marks omitted). We rejected the view that state law could bar enforcement of § 2, even in the context of state-law claims brought in state court. See id., at 10-14, 104 S.Ct. 852; see also *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-273, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

7

. . .

> *Prima Paint* and *Southland* answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court.

Id. at 444-46 (emphases added) (footnotes omitted).

In Lee v. Heftel, 81 Hawaiʻi 1, 911 P.2d 721 (1996), the appellants challenged a trial court's order compelling arbitration, asserting that fraud in the inducement was grounds to revoke the subject real estate contract such that the contract's arbitration clause was not enforceable. Id. at 2, 911 P.2d at 722. The Hawaiʻi Supreme Court analyzed Prima Paint and other federal case law and held that, "where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." Id. at 4, 911 P.2d at 724 (quoting Prima Paint, 388 U.S. at 404).

Further, although not directly addressing the issue raised in this appeal, the Hawaiʻi Supreme Court in Siopes [v. Kaiser Found. Health Plan, Inc., 130 Hawaiʻi 437, 457 n.28, 312 P.3d 869, 889 n.28 (2013),] recognized that an arbitration provision is severable from the rest of a contract, including as recognized in Buckeye. In Siopes, the Hawaiʻi Supreme Court stated:

> In *Brown*, this court recognized that "[f]or almost forty years, arbitration agreements have been regarded, as a matter of federal law, as severable and distinct from the underlying agreement." 82 Hawaiʻi at 245, 921 P.2d at 165. The court held that generally, "an arbitration agreement is severable from the writing in which it is embedded." *Id.* at 246, 921 P.2d at 166. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract"); Richard A. Lord, 21 *Williston on Contracts* 245 (4th ed. 2001) ("Ordinarily, an arbitration clause will be treated as a separate contract, and severable from the main body of the contract. Thus, whenever possible, an arbitration clause will be held severable ....") (footnote omitted).

130 Hawaiʻi at 457 n.28, 312 P.3d 889 n.28.

Inoue, 2021 WL 1700940, at *3-5 (some emphases added, footnote renumbered and altered).

8

Given the prevailing case authority and Sues's failure to challenge the arbitration provision itself, we conclude that the Circuit Court erred in not severing the arbitration clause from the rest of the Agreement and enforcing the agreement to arbitrate. Accordingly, the Circuit Court erred in denying NDR's motion to compel arbitration.

## IV. Conclusion

For the reasons discussed above, we vacate the June 4, 2019 "Order Denying 'Defendant [NDR's] Motion to Compel Arbitration, to Stay Proceedings, or, in the Alternative, to Dismiss the Amended Class Action Complaint, Filed on January 8, 2019,' Filed March 13, 2019," entered in the Circuit Court of the First Circuit. The case is remanded to the Circuit Court with instructions to enter an order granting NDR's motion to compel arbitration.

DATED: Honolulu, Hawaiʻi, May 14, 2021.

On the briefs:

Andrew J. Lautenbach, and
John H. Pelzer and Beth-Ann
E. Krimsky (Pro Hac Vice),
for Defendant-Appellant.

Justin A. Brackett,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Karen T. Nakasone
Associate Judge