*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCAP-15-0000912
13-JUN-2017
08:00 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

LAURA GABRIEL, Plaintiff/Appellant-Cross-Appellee,

vs.

ISLAND PACIFIC ACADEMY, INC., a domestic nonprofit corporation;
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10;
AND DOE GOVERNMENTAL AGENCIES 1-10,
Defendants/Appellees-Cross-Appellants.

_____

SCAP-15-0000912

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-15-0000912; CIV. NO. 15-5-0852-05)

JUNE 13, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

At issue in this case is whether it is unconscionable to require an employee to pay half the estimated arbitration costs up front in order to access the arbitral forum. We hold that, under the circumstances of this case, such a requirement is

unconscionable and unenforceable. We further hold that, in this case, striking this requirement in the arbitration provision provides an insufficient remedy; rather, the entire arbitration provision must be invalidated.

## II. Background

### A. Facts

Laura Gabriel ("Gabriel") taught physical education at Island Pacific Academy ("IPA") from 2006 through 2014. Gabriel and IPA contracted for her employment annually. In December 2013, one of her 8th grade male students dropped his water bottle, and water hit Gabriel. She remarked, "Why are you guys always getting me wet?" which prompted three of her male students to snicker that the boys in the class were always getting Gabriel wet. Gabriel surmised that she was the butt of a sexual joke and reported the incident as sexual harassment to IPA administration. The Secondary Principal, Kip Cummings, told Gabriel that she would no longer be teaching the class containing those male students. Ms. Cummings also expressed her concern over parent complaints about Gabriel's class. Ms. Cummings said she could not trust Gabriel and would not support her when parents complain.

Three months after this incident, in March 2014, IPA issued Gabriel an employment agreement for the 2014-2015 school year

and requested her signature on it by April 2014.  The employment

agreement contained the following arbitration provision:

> L.  Arbitration.  The parties desire that any dispute
> concerning the Agreement be handled out of court.
> Accordingly, they agree that any such dispute shall, as the
> parties' sole and exclusive remedy, be submitted to an
> arbitrator licensed to practice law in the State of Hawaii
> and selected in accordance with the standard procedures of
> Dispute Prevention Hawaii [sic].  The arbitrator will not
> be entitled to add to or subtract from its terms.  Should
> either party start any legal action or administrative
> proceeding against the other with respect to any claim
> related to this Agreement, or pursue any method of
> resolution of a dispute other than mutual agreement of the
> parties or arbitration, then all damages, costs, expenses
> and attorneys' fees incurred by the other party as a result
> shall be the responsibility of the one bringing the suit or
> starting the proceeding.[1]

The employment agreement also provided that "[t]he parties agree

that this contract shall be interpreted in accordance with the

laws of the state of Hawaii. . . ."  Gabriel timely signed and

submitted the employment contract.  Gabriel alleged that the

Headmaster informed her that her employment contract was not

going to be honored because Ms. Cummings did not want to work

with her.  Gabriel's last day with IPA was in June 2014.

In October 2014, Gabriel filed her charge of discrimination

with the Hawaiʻi Civil Rights Commission ("HCRC"), to be filed

with the United States Equal Employment Opportunity Commission,

alleging retaliation.  The HCRC issued Gabriel a right to sue

letter in February 2015.

---

[1]    The 2013-2014 employment agreement between Gabriel and IPA contained an
identical agreement to arbitrate.

3

**B. Gabriel's First Amended Complaint**

In May 2015, Gabriel filed her First Amended Complaint with the Circuit Court of the First Circuit.[2] She alleged that IPA refused to hire her for the 2014-2015 school year in retaliation for her sexual harassment complaint, in violation of HRS § 378-2(2) (2015), and that IPA's actions resulted in intentional infliction of emotional distress ("IIED"). She sought back pay, front pay, and all employee benefits that she would have enjoyed, as well as general and punitive damages for IIED.

**C. IPA's Motion to Compel Arbitration**

IPA filed a Motion to Compel Arbitration. IPA, through counsel, averred that Gabriel was terminated due to a reduction in force because of insufficient enrollment, not due to discriminatory retaliation. IPA pointed out that subsection H(e)[3] of the employment agreement provided for termination due to business conditions. Should the employee be terminated for that reason, IPA noted that subsection H of the employment agreement provided for the continuation of the arbitration obligation. IPA asked the circuit court to stay the proceedings pending arbitration. IPA also sought an award of its attorney's fees

---

[2] The Honorable Karen T. Nakasone presided.

[3] Subsection H(e) of the employment agreement is titled "Termination Due to Business Conditions." It states, "As necessary as determined by the school due to business conditions, including, but not limited to, insufficient enrollment, unsuitability of facilities, change in curriculum, or elimination of position, all is determined in the School's sole discretion."

4

and costs for bringing the motion to compel arbitration, pursuant to the employment agreement's arbitration provision. IPA also contended that an award of attorney's fees and costs could also be made pursuant to the circuit court's inherent power, arguing that any opposition to IPA's motion would be frivolous.

Gabriel opposed IPA's motion to compel arbitration. She argued that she and IPA had not entered into the 2014-2015 employment agreement (IPA had not signed the agreement) and no consideration was given under the agreement; therefore, IPA was foreclosed from attempting to enforce the agreement's arbitration provision. Assuming there was a valid agreement to arbitrate, Gabriel argued that her civil rights claim was beyond its scope. Furthermore, she argued, the arbitration agreement was unenforceable because it was included in an employment agreement that constituted a contract of adhesion, offered to Gabriel on a "take-it-or-leave-it" basis. Gabriel also argued that the arbitration provision was unconscionable because it required her to pay for the arbitration costs in a civil rights matter. Lastly, Gabriel opposed IPA's request for attorney's fees and costs under the arbitration provision, arguing that the provision was unenforceable. Gabriel also opposed an award of fees and costs under the circuit court's inherent power, arguing

5

that her opposition to the motion to compel arbitration was not frivolous.

The circuit court held a hearing on IPA's motion to compel arbitration. Although the arbitration provision states that the parties shall submit disputes concerning the employment agreement "to an arbitrator licensed to practice law in the State of Hawaii and selected in accordance with the standard procedures of <u>Dispute Prevention Hawaii</u> [sic]" (emphasis added), the parties and the court assumed that Dispute Prevention and Resolution, Inc. ("DPR") would be the arbitral body. The circuit court directed the parties to enter DPR's standard procedures into the record. The circuit court also asked the parties to submit supplemental briefing addressing whether the arbitration provision was unconscionable because DPR's standard procedures required the parties to split arbitration fees.

**D. Supplemental Briefing**

DPR's standard procedures were entered into the record. In her supplemental brief, Gabriel quoted the following material from DPR's rules to show that she would have to pay for half of the cost of arbitration, and would be required to pay and submit half of the deposit for the fees of the arbitrator prior to the arbitration:

> I. DPR FEES & COSTS
> . . . .
> <u>Any out-of-pocket expenses incurred by the DPR appointed neutral</u> (e.g., air fare, lodging, meals) in conjunction

6

with a DPR proceeding <u>are to be borne equally by the parties</u> and shall be paid to the appointed neutral from funds deposited by the parties with DPR for that purpose.
. . . .
II. ADVANCE DEPOSITS & REFUNDS
     <u>DPR policy requires that each party submit advance deposits toward the anticipated fees and expenses of the DPR appointed neutral on an equal or pro rata basis</u>. DPR may require the parties to submit additional deposits during the pendency of the arbitration proceeding based on the expected duration of the matter. DPR and the DPR appointed neutral reserve the right to suspend their services for non-payment by any party. <u>In the event of inadequate or non-payment of requested deposits by a party, DPR may request that the other party(s) involved in the proceeding submit additional deposits to assure that an adequate sum is available to compensate the DPR neutral</u>.
. . . .

Gabriel's supplemental brief was accompanied by a declaration in which she averred that she was without a full-time job, having financial difficulty, and unable to pay for the costs of arbitration.[4] Gabriel also cited out-of-jurisdiction cases for the proposition that courts have found arbitration agreements unconscionable where the putative grievant is made to pay for arbitration costs in a civil rights matter.

In its supplemental brief, IPA first argued that the arbitration agreement did not require cost-splitting and was, in fact, silent on the issue of fees and costs; all the arbitration agreement required was selection of a neutral arbitrator "in accordance with the standard procedures of Dispute Prevention Hawaii [sic]." IPA pointed out that the final payment of fees and costs is determined by the arbitrator according to HRS §

---

[4]    Elsewhere in the record, there is evidence that IPA paid Gabriel $35,000 the first year she taught (2006-2007); $36,400 the following year (2007-2008); and would have paid Gabriel $45,000 for the 2014-2015 school year.

658A-21(d) (2016).[5]  Consequently, IPA argued, Gabriel's claim that she will incur costs in arbitration that will prevent her from vindicating her rights is "completely speculative" and an insufficient basis for refusing to compel arbitration under Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79 (2000).

IPA then argued that, if the circuit court was persuaded that the cost of arbitration would be prohibitively expensive for Gabriel, it should sever any arguably unconscionable provision or interpret the parties' agreement to require arbitration under conditions that the Court believes are necessary to allow Gabriel the ability to vindicate her rights. IPA considered the possibility that Gabriel might have to pay half of the arbitration deposit to be the only arguably unconscionable aspect of the agreement.  The 2014-2015 employment agreement did contain a severability clause that states, "Should any provision of this contract be invalidated by a court of law with proper jurisdiction, the remaining provisions shall remain in full force and effect."

## E.  The Parties' Arbitration Cost Estimates

The circuit court then ordered the parties to submit an estimate of arbitration costs from DPR for this case.  Gabriel's counsel estimated that it would take three and one half days to put on Gabriel's case, and IPA's counsel estimated that it would

---

[5]    HRS § 658A-21(d) states, "An arbitrator's expenses and fees, together with other expenses, shall be paid as provided in the award."

take half a day to put on its case.  At Gabriel's counsel's request, DPR Case Manager Kelly Bryant estimated that it would cost $20,418.84 for a four-day arbitration.  Bryant informed Gabriel's counsel that each party would need to remit a $10,200.00 deposit to DPR.  After previously telling Gabriel's counsel that the defense portion of the arbitration would take half a day, IPA's counsel estimated that the entire arbitration would take half a day.  At IPA's counsel's request, Bryant estimated that the total cost would be $2,748.69 and that she would ask each party for a deposit of $1,375.00.

**F.  The Circuit Court's Order Granting IPA's Motion to Compel Arbitration**

The circuit court granted IPA's motion to compel arbitration, on the condition that IPA pay all of the arbitrator's fees in connection with the resolution of Gabriel's claims.  The circuit court first concluded that the parties entered into a valid employment contract when Gabriel returned the signed 2014-2015 employment Agreement.  The circuit court concluded that IPA terminated the 2014-2015 employment Agreement according to its terms, for business reasons.  The circuit court concluded that the arbitration agreement was broad enough to encompass Gabriel's claim that IPA refused to renew her employment for the 2014-2015 academic year due to discriminatory retaliation against her.  The circuit court found that the

9

arbitration agreement was supported by consideration, as both parties mutually agreed to arbitrate and forgo the right to litigate in court. Even though Gabriel was not hired for the 2014-2015 school year, the circuit court found that she was bound by the 2014-2015 employment agreement's terms, analogizing Gabriel's case to failure-to-hire cases. The circuit court also concluded that the absence of an IPA agent's signature on the 2014-2015 employment agreement was not a basis for avoiding arbitration, where the agreement manifests the employer's intent to be bound by the arbitration provision.

The circuit court, however, concluded that the arbitration agreement was unconscionable as applied, because it effectively requires Gabriel to pay for arbitration costs to adjudicate her statutory civil rights claim in an arbitral forum, and that she would not have to bear such costs by bringing her action in a judicial forum. The circuit court concluded that the arbitration clause was procedurally unconscionable as a contract of adhesion because it was the result of coercive bargaining between parties of unequal bargaining strength. The circuit court reasoned that the employment agreement was drafted and proffered by IPA, the stronger of the contracting parties; the employment agreement was offered to Gabriel on a take-it-or-leave-it basis; Gabriel was given only a few weeks to review and sign the 2014-2015 employment agreement, which contained the

10

arbitration provision; the employment agreement required Gabriel to certify that she sought employment only with IPA; and Gabriel was given no opportunity to modify the terms of the employment agreement.  The circuit court also concluded that the arbitration clause was substantively unconscionable because it unfairly limits the obligations of and unfairly advantages IPA, the stronger party, by compelling Gabriel, the weaker party, to split the arbitration costs.  The circuit court supported its conclusion with a citation to Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465 (D.C. Cir. 1997).

Although the circuit court noted that the arbitration agreement did not contain an express provision regarding payment or sharing of arbitration fees and costs, it noted that the arbitration agreement required the parties to arbitrate through DPR.  The circuit court deemed Gabriel's $20,418.84 arbitration estimate to be reasonable, and noted that Gabriel would have to pay roughly half of this amount as a deposit.  The circuit court found it unconscionable that Gabriel would have to pay a $10,200.00 deposit to even access the arbitral forum; it concluded that enforcing such a payment would preclude Gabriel from vindicating her statutory rights in the arbitral forum. The circuit court noted that Gabriel would have to pay a filing fee of only $515.00 to have her case heard in circuit court,

11

making the $10,200.00 arbitration cost prohibitive and exorbitant.

Nevertheless, the circuit court concluded that the arbitration clause could still be enforced by requiring IPA to pay for all arbitration fees and costs to resolve Gabriel's claims, as the Cole court had done.

Lastly, the circuit court denied IPA's request for an award of fees and costs in connection with its motion to compel arbitration.

## G. Gabriel's Appeal and IPA's Cross-Appeal

Gabriel timely appealed from the order granting IPA's motion to compel arbitration. Gabriel raises the following points of error on appeal:

> 1. The Circuit Court, through its Order, erred in concluding that as a matter of law that Plaintiff's claims against Defendant are subject to, and require, mandatory arbitration pursuant to the non-honored Employment Agreement and the applicable Hawai'i law.
> . . . .
> 2. The Circuit Court, through its Order, after finding the Arbitration Clause . . . was unconscionable, erred in ordering an erroneous modification of the Arbitration Clause of the Employment Agreement.

IPA cross-appealed from the order. IPA raises the following points of error on appeal:

> 1. The Circuit Court erred in holding the arbitration agreement is substantively unconscionable, and therefore ordering IPA to pay for all fees and costs of arbitration, because "[t]he arbitration clause in the instant case would make Plaintiff pay for half the cost of the DPR arbitration. Arbitration would prohibitively and exorbitantly cost Plaintiff $10,200.00."
> . . . .
> 2. The Circuit Court erred in denying IPA fees and costs for the necessity of bringing its motion to compel.

12

This court accepted transfer of this appeal from the ICA.

## III. Standard of Review

"A petition to compel arbitration is reviewed de novo." Siopes v. Kaiser Found. Health Plan, Inc., 130 Hawaiʻi 437, 446, 312 P.3d 869, 878 (2013). "The standard is the same as that which would be applicable to a motion for summary judgment, and the trial court's decision is reviewed 'using the same standard employed by the trial court and based upon the same evidentiary materials as were before [it] in determination of the motion.'" Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 231, 921 P.2d 146, 151 (1996) (brackets in original; citations omitted).

## IV. Discussion

### A. This court has jurisdiction over this appeal.

Before this appeal was transferred to this court from the ICA, IPA moved to dismiss Gabriel's appeal for lack of appellate jurisdiction. IPA argued that federal substantive law of arbitrability precludes an appeal from an order compelling arbitration. The ICA issued an order denying IPA's motion, as well as an order denying IPA's motion for reconsideration of that order. In its Answering Brief to Gabriel's Opening Brief, however, IPA persists in arguing that appellate jurisdiction is lacking because the Federal Arbitration Act, or "FAA," applies to the parties' agreement to arbitrate and preempts Hawaii's

13

procedural rule permitting appeal of an order compelling arbitration and staying judicial proceedings.  We disagree.

It is true that the FAA states that "an appeal may not be taken from an interlocutory order . . . compelling arbitration under section 206 of [the FAA]."  9 U.S.C. § 16(b)(3) (West, Westlaw through P.L. 114-327 (also including P.L. 114-329 and 115-1 to 115-8.  Title 26 current through 115-18)).  According to the United States Court of Appeals for the Ninth Circuit, it is now "well established that § 16(b) bars appeals of interlocutory orders compelling arbitration and staying judicial proceedings."  Johnson v. Consumerinfo.com, Inc., 745 F.3d 1019, 1021 (9th Cir. 2014).  In the case before us, the circuit court compelled arbitration and stayed the judicial proceedings pending arbitration.  Had this order been issued by a federal district court, it is clear that it would not be appealable.  See, e.g., MediVas, LLC v. Marubeni Corp., 741 F.3d 4, 7 (9th Cir. 2014) ("[A]n order compelling arbitration may be appealed if the district court dismisses all the underlying claims, but may not be appealed if the court stays the action pending arbitration.") (citations omitted).

This order, however, was issued in our state circuit court.  Under Hawaiʻi law, a circuit court order compelling arbitration and staying proceedings is an appealable final order over which our appellate courts have jurisdiction.  See Association of

14

Owners of Kukui Plaza v. Swinerton & Walberg Co., 68 Haw. 98, 107, 705 P.2d 28, 35 (1985) (holding that "orders granting stays and compelling arbitration are appealable" under HRS § 641-1(a)); County of Hawaiʻi v. UNIDEV, LLC, 129 Hawaiʻi 378, 392, 301 P.3d 588, 602 (2013) ("[A]fter Hawaii's adoption of HRS § 658A-28, orders compelling arbitration remain appealable under Hawaii's final judgment statute, HRS § 641-1.")) (citation omitted).

IPA argues that the Hawaiʻi rule allowing appeals of orders staying proceedings and compelling arbitration is preempted because it conflicts with the FAA rules regarding appeals. IPA asserts that by delaying arbitration proceedings, the Hawaiʻi rule contradicts and obstructs the overarching purpose of the FAA to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.

Alternatively, while IPA acknowledges that the parties' employment agreement contains a choice-of-law provision calling for the application of Hawaiʻi law, IPA argues that the parties have not agreed to apply Hawaii's procedural rule simply by having a choice of law provision that selects Hawaiʻi law. We disagree and conclude that the FAA does not preempt Hawaii's procedural rule, and applying Hawaii's procedural rule will be

15

consistent with the parties' expectations under the arbitration agreement.

The FAA does not automatically preempt "different rules than those set forth in the Act itself."  Volt Info. Scis., Inc. v. Board of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989).  The FAA's purpose is "simply [to] require[] courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."  489 U.S. at 478.  Under the FAA, parties may "agree[] to abide by state rules of arbitration, [and] enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA. . . ."  489 U.S. at 479.  The FAA does not preempt those state rules that may delay arbitration "where the Act would otherwise permit it to go forward."  Id.  The Volt court emphasized that no federal policy exists for "favoring arbitration under a certain set of procedural rules. . . ."  489 U.S. at 476.  A state procedural rule governing arbitration, applied "in accordance with the terms of the arbitration agreement itself," does not "undermine the goals and policies of the FAA."  489 U.S. at 477-78.  So long as the state procedural rule does not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA, it does not conflict with the FAA, and the FAA will not preempt it.  489 U.S. at 477 (citation omitted).

16

For those jurisdictions that have examined whether the FAA's appeal provisions preempt state appeal provisions (where those state appeal provisions are based on the Uniform Arbitration Act, as Hawaii's arbitration appeal provisions are), a majority rule has emerged: the FAA's appeal provisions do not preempt state appeal provisions because (1) state appeal provisions are procedural rather than substantive; (2) procedural provisions should not be preempted unless they stand as an obstacle to the full purposes and objectives of the FAA; and (3) the state procedural rules do not impede the FAA's objective of ensuring the enforceability of arbitration agreements in private contracts. Morgan Keegan & Co., Inc. v. Smythe, 401 S.W.3d 595, 606 (Tenn. 2013) (collecting cases following the majority rule). More specifically, some of these jurisdictions have held that an order compelling arbitration is immediately appealable under state procedural rules. See, e.g., Kremer v. Rural Cmty. Ins. Co., 788 N.W.2d 538 (Neb. 2010); Wells v. Chevy Chase Bank, F.S.B., 768 A.2d 620 (Md. 2001); Simmons v. Deutsche Fin. Servs. Corp., 532 S.E.2d 436 (Ga. 2000).

Therefore, this court will enforce the parties' choice-of-law provision and apply Hawaii's procedural rules to this matter. This court has jurisdiction to entertain this appeal.

17

**B.** **The circuit court correctly concluded that the parties entered into a valid arbitration agreement, and that Gabriel's retaliation claim was within the scope of the arbitration agreement.**

Under <u>Brown</u>, a court faced with a motion to compel arbitration must first address whether an arbitration agreement exists between the parties. <u>Brown</u>, 82 Hawaiʻi at 238, 921 P.2d at 158 (citation omitted). In order to be valid and enforceable, "an arbitration agreement must have the following three elements: (1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration." <u>Douglass v. Pflueger Hawaii, Inc.</u>, 110 Hawaiʻi 520, 531, 135 P.3d 129, 140 (2006) (citation omitted).

On appeal, Gabriel argues that the parties did not enter into the 2014-2015 employment agreement, and, therefore, did not enter into the arbitration agreement found within it. Gabriel argues that, as she was not hired for the 2014-2015 academic year, no consideration supported the 2014-2015 contract or the arbitration provision within it. She again points out that IPA did not sign the 2014-2015 employment agreement.

IPA's position is that the parties entered into a valid arbitration agreement. IPA argues that Gabriel accepted IPA's offer of employment when she signed and returned the 2014-2015 employment agreement, unmodified. In so doing, she entered into

18

the arbitration agreement, which was contained in the employment agreement. Concerning Gabriel's argument that no consideration existed to support the 2014-2015 employment agreement and the arbitration agreement within it, IPA counter-argues that consideration supported the arbitration agreement because both Gabriel and IPA agreed to forgo their rights to litigate in court, citing Brown, 82 Hawaiʻi at 239-40, 921 P.2d at 159-60; and Douglass, 110 Hawaiʻi at 534-35, 135 P.3d at 143-44.

For the reasons stated by IPA, we conclude that Gabriel and IPA entered into an arbitration agreement. The arbitration agreement (1) was in writing; (2) unambiguously bound the parties to "handle[] out of court" "any dispute concerning this Agreement" through submission of the dispute to an arbitrator; and was supported by bilateral consideration, as both parties "would forego [sic] their respective rights to a judicial forum" and accept the binding arbitration process." Brown, 82 Hawaiʻi at 239-40, 921 P.2d at 159-60. Additionally, it did not matter that an agent from IPA did not sign the employment agreement. This case is similar to Brown, where this court enforced an arbitration agreement found in an employment application signed by the prospective employee but not by the employer. See Brown, 82 Hawaiʻi at 229, 921 P.2d at 149. When Gabriel signed and returned the 2014-2015 employment agreement, she accepted IPA's

19

offer for employment, and all of the terms that came with it, including an agreement to arbitrate.

We note that the entire employment agreement is relatively short at four pages long. It is written in plain English with no fine print or cross-references to other documents. The arbitration agreement is located on the same page as Gabriel's signature. Thus, this case is unlike other cases in which questions arise as to an employee's intent to be bound to an arbitration provision that is physically separate from an employment contract. See, e.g., Brown, 82 Hawaiʻi at 245, 921 P.2d at 165 (holding that an arbitration agreement contained in an employment application applied to a discrimination claim arising out of a later executed oral contract for employment); Douglass, 110 Hawaiʻi at 534, 135 P.3d at 143 (holding that mutual assent to arbitrate was lacking, where the employment contract did not contain the arbitration agreement, and the employee merely signed an acknowledgement of having read a separate employee handbook, which did contain the arbitration agreement). In this case, by contrast, the plain language of the arbitration agreement demonstrates the parties' mutual assent to arbitrate. In short, a valid and enforceable arbitration agreement exists between the parties.

A court faced with a motion to compel arbitration must next decide whether "the subject matter of the dispute is arbitrable

20

under the agreement." Brown, 82 Hawai'i at 238, 921 P.2d at 158 (citation omitted). Gabriel argues that the arbitration agreement governs matters covered in the employment agreement, but not civil rights claims under HRS § 378-2(2). IPA counter-argues that Hawai'i courts have long recognized the strong public policy supporting Hawaii's arbitration statutes, and that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, citing Lee v. Heftel, 81 Hawai'i 1, 4, 911 P.2d 721, 724 (1996).

We conclude that Gabriel's discriminatory retaliation claim was within the scope of the arbitration agreement, because the arbitration agreement required her to "handle[] out of court" "any dispute concerning this Agreement" by submitting the dispute to an arbitrator. At the federal and state level, there exists a strong policy in favor of arbitration, such that any doubt concerning whether a dispute is covered by an arbitration agreement should be resolved in favor of arbitrability. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

21

arbitrability.") (footnote omitted); Lee, 81 Hawaiʻi at 4, 911 P.2d at 724 ("[T]he proclaimed public policy [supporting Hawaii's arbitration statutes] is to encourage arbitration as a means of settling differences and thereby avoiding litigation. [A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]") (citations omitted).

IPA also correctly observes that arbitration agreements should be interpreted broadly in favor of finding arbitrability, where the arbitration agreement is worded similarly to the instant one regarding "any dispute concerning this Agreement." Indeed, in UNIDEV, we examined an arbitration agreement that stated that "[a]ny dispute arising under the terms of this Agreement . . . shall[, if the matter cannot be resolved by other preliminary means] submit the matter to arbitration. . . ." 129 Hawaiʻi at 381, 301 P.3d at 591 (emphasis added). We held that an arbitration agreement worded this way "constitutes a 'general' arbitration clause" whose scope should be interpreted broadly. 129 Hawaiʻi at 395-96, 301 P.3d at 605-06. In short, Gabriel's retaliation claim falls within the scope of the arbitration agreement.

Lastly, Gabriel argues that a discriminatory retaliation claim is not expressly referenced in the employment agreement, and, therefore, falls beyond the scope of the arbitration

agreement.  We disagree and note that the arbitration agreement

covered termination due to alleged retaliatory discrimination,

because the employment agreement implicitly included within it

Hawaii's laws concerning discrimination in employment.  A

contract is presumed to include all applicable statutes and

settled law relating to its subject matter.  Section 363 of 17A

Am.Jur.2d Contracts (2016) states

> Contracting parties are presumed to contract in reference
> to the existing law, and to have in mind all the existing
> laws relating to the contract, or to the subject matter
> thereof.  All existing applicable or relevant statutes, and
> settled law of the land at the time a contract is made
> become a part of it and must be read into it just as if an
> express provision to that effect were inserted therein,
> except where the contract discloses a contrary intention.
> By virtue of this rule, the laws which exist at the time
> and place of making a contract and at the place where it is
> to be performed, affecting its validity, construction,
> operation, performance, enforcement, and discharge, enter
> into and form a part of it as if they were expressly
> referred to or incorporated into its terms.

This court favorably cited to and applied this general rule in

City and Cty. of Honolulu v. Kam, 48 Haw. 349, 402 P.2d 683

(1965), and Quedding v. Arisumi Bros., 66 Haw. 335, 661 P.2d 706

(1983) (per curiam).  In both Kam and Quedding, this court held

that the "general rule [is] that the existing law is part of a

contract where there is no stipulation to the contrary." Kam, 48

Haw. at 355, 402 P.2d at 687; Quedding, 66 Haw. at 338, 661 P.2d

at 709.  Therefore, the arbitration agreement's scope included

Gabriel's retaliatory discrimination claim.

23

In short, the parties entered into a valid employment agreement containing an arbitration agreement, and the arbitration agreement covered Gabriel's claims.

**C.    The arbitration agreement's cost-splitting requirement is unconscionable and, therefore, unenforceable.**

On appeal, Gabriel argues that the arbitration agreement is unenforceable because it is procedurally and substantively unconscionable.  She contends the 2014-2015 employment agreement that contained the arbitration agreement was procedurally unconscionable because it was a contract of adhesion, offered to her on a take-it-or-leave-it basis, and she was only given a few weeks to review and sign it.  Gabriel maintains that she had no opportunity to negotiate the terms of the 2014-2015 employment agreement, that she was not told she was agreeing to arbitrate civil rights claims, and that the arbitration agreement was not made conspicuous within the employment agreement.  Gabriel argues that the arbitration agreement was also substantively unconscionable because it unfairly advantaged IPA by limiting her access to the courts and costing her a significant amount of money to arbitrate her claims.

Under Hawaiʻi law, an arbitration agreement is generally "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." HRS § 658A-6(a) (2016).  One of those grounds is

24

unconscionability. See Lewis v. Lewis, 69 Haw. 497, 500, 748 P.2d 1362, 1366 (1988). Unconscionability encompasses two principles: one-sidedness (substantive unconscionability) and unfair surprise (procedural unconscionability). Balogh v. Balogh, 134 Hawaiʻi 29, 41, 332 P.3d 631, 643 (2014). The Balogh court noted, "Generally, a determination of unconscionability requires a showing that the contract was both procedurally and substantively unconscionable when made," but an impermissibly one-sided contract can be unconscionable and unenforceable without a showing of unfair surprise. Id. (citing Adler v. Fred Lind Manor, 103 P.3d 773, 782 (Wash. 2004) (en banc) (brackets and ellipsis omitted).

We have applied the doctrine of unconscionability in multiple contractual contexts, not just in the arbitration context. See, e.g., Balogh, 134 Hawaiʻi 29, 332 P.3d 631 (memorandum of understanding regarding property division in divorce); Thompson v. AIG Hawaii Ins. Co., 111 Hawaiʻi 413, 142 P.3d 277 (2006) (personal injury settlement agreement); Lewis, 69 Haw. 497, 748 P.2d 1362 (premarital agreements); Earl M. Jorgensen Co., v. Mark Constr., 56 Haw. 466, 540 P.2d 978 (1975) (contract for sale of goods). Therefore, application of the unconscionability doctrine in this case places the arbitration agreement "on equal footing with all other contracts," DIRECTV,

25

*Inc. v. Imburgia*, 136 S. Ct. 463, 465 (2015), and does not "single[]out arbitration agreements for disfavored treatment. . . ." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1425 (2017).

Gabriel urges us to follow cases from the United States Court of Appeals for the Ninth Circuit that hold that an arbitration agreement's cost-splitting requirement is, standing alone, so substantively unconscionable as to render the entire arbitration agreement unenforceable. The Ninth Circuit has examined, under California law, a similar requirement that an employee split arbitration fees with her employer. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002). The Ninth Circuit held, "This fee allocation scheme alone would render an arbitration agreement unenforceable." *Id.* (footnote and citation omitted). The Ninth Circuit ultimately invalidated the entire arbitration agreement because additional provisions provided further justification for finding the arbitration agreement unconscionable and, therefore, unenforceable. *Id.* at 896.

In *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 785 n.7 (9th Cir. 2002), the Ninth Circuit favorably cited *Adams*' holding, noting that a cost-splitting requirement between employer and employee posed a "significant deterrent effect . . . on employees who are required to arbitrate their

26

civil rights claims."  The Ferguson court elaborated that "the significant up-front costs associated with bringing a claim in an arbitral forum may prevent individuals with meritorious claims from even pursuing these claims in the first place."  Id. at n.8.  Similarly, in Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1178 (9th Cir. 2003), the Ninth Circuit again favorably cited Adams and added that an arbitration agreement calling for an employee to share arbitration costs with an employer was "harsh and unfair to employees seeking to arbitrate legal claims," and is, therefore, substantively unconscionable.

We do not go so far as to adopt a holding that a cost-splitting requirement in arbitration is per se unconscionable and, therefore, unenforceable.  Rather, whether cost-splitting in arbitration is unconscionable depends on the facts of each case.  Under the circumstances of this case, the cost-splitting provision is substantively unconscionable because it would be prohibitively expensive for Gabriel to pursue her claims in the arbitral forum.

During the course of her employment with IPA, Gabriel's salary ranged from $35,000 to $45,000.  As part of this litigation, she filed a declaration stating that she was without a full-time job, having financial difficulty, and unable to pay for the costs of arbitration.  Gabriel also submitted evidence from DPR that it would cost $20,418.84 for a four-day

27

arbitration, and that she would need to remit a $10,200.00 deposit to DPR. It is unconscionable to require a terminated school teacher to pay, up-front, a deposit amounting to one-quarter to one-third of her former <u>annual</u> salary in order to access the arbitral forum.[6] Therefore, we hold that the cost-splitting requirement alone is unconscionable as impermissibly one-sided, in favor of IPA. <u>Balogh</u>, 134 Hawaiʻi at 41, 332 P.3d at 643. This conclusion renders it unnecessary for this court to pass on the issue of procedural unconscionability. We note, however, that IPA did not challenge the circuit court's finding that the manner[7] by which Gabriel agreed to the cost-splitting requirement was procedurally unconscionable. Therefore, we accept that finding, which provides an additional basis for rendering the cost-splitting requirement unenforceable as unconscionable.

Despite ample evidence in the record that Gabriel will not be financially able to arbitrate her claims, IPA argues that

[6]    We would similarly conclude that it would be unconscionable to require such cost-splitting in, for example, the mediation context. As such, our unconscionability analysis does not single out arbitration agreements for disfavored treatment. <u>See</u> <u>Kindred Nursing Ctrs. Ltd. P'ship</u>, 137 S. Ct. at 1425.

[7]    As stated earlier, the circuit court concluded that the arbitration agreement was procedurally unconscionable as a contract of adhesion because it was the result of coercive bargaining between parties of unequal bargaining strength. The circuit court noted that the arbitration agreement was drafted and proffered by IPA, the stronger of the contracting parties; was offered to Gabriel on a take-it-or-leave-it basis; Gabriel was given only a few weeks to review and sign the 2014-2015 employment agreement, which contained the arbitration agreement; the employment agreement required Gabriel to certify that she sought employment only with IPA; and Gabriel was given no opportunity to modify the terms of the employment agreement.

28

Gabriel did not carry her burden of proving the likelihood that she would incur prohibitively expensive arbitration costs under Green Tree, 531 U.S. 79. In Green Tree, an employee asserted that she would be unable to vindicate her statutory rights (there, her rights under the federal Truth in Lending Act and the federal Equal Credit Opportunity Act) if she were compelled to arbitrate her claims, because there was a risk she would have to pay potentially substantial costs in arbitration. 531 U.S. at 83, 89. The United States Supreme Court disagreed, noting that the employee had utterly failed to substantiate her assertion. 531 U.S. at 90 n.6.

The United States Supreme Court observed that the record "does not show that [the employee] will bear such [large arbitration] costs if she goes to arbitration. Indeed, it contains hardly any information on the matter." 531 U.S. at 90 (footnote omitted). All the employee submitted to the district court, in a motion for reconsideration, was an "assert[ion] that '[a]rbitration costs are high' and that she did not have the resources to arbitrate." 531 U.S. at 90 n.6. The employee provided no estimates of the cost of arbitration and, instead, "assumed" the American Arbitration Association, or AAA, would conduct the arbitration, noting (without evidentiary support) that the AAA charged a $500 filing fee for claims under $10,000.

29

Id. The employee also submitted an article stating that arbitration costs are, on average, $700 per day. Id.

The Court concluded that the employee "plainly failed to make any factual showing that the American Arbitration Association would conduct the arbitration, or that, if it did, she would be charged the filing fee or arbitrator's fee that she identified." Id. The Court stated, "The 'risk' that [the employee] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." 531 U.S. at 91. The Court went on to hold that, "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." 531 U.S. at 92.

IPA argues that, like the employee in Green Tree, Gabriel failed to carry her burden of proving that arbitration would be so prohibitively expensive for her that it would prevent her from vindicating her statutory rights (in this case, statutory rights under HRS Chapter 378, which prohibits discrimination in employment). Green Tree, however, involved the vindication of federal statutory rights in the arbitral forum. 531 U.S. at 89-91. It is an open question, however, as to whether Green Tree applies in cases where claimants challenge arbitration as a forum for vindicating state statutory rights. See, e.g.,

30

<u>Kaltwasser v. AT&T Mobility</u>, 812 F. Supp. 2d 1042, 1048 (N.D. Cal. 2011) ("[I]t is not clear that <u>Green Tree</u>'s solicitude for the vindication of rights applies to rights arising under state law, which are the only rights that [the claimant] seeks to vindicate here."); and <u>James v. McDonald's Corp.</u>, 417 F.3d 672, 679 (7th Cir. 2005) ("It remains unclear whether the rationale of <u>Green Tree</u> applies to situations that do not involve the assertion of federal statutory rights.").

<u>Green Tree</u> itself thrice referenced the vindication of "<u>federal</u> statutory claims" in reaching its holding. <u>Green Tree</u>, 531 U.S. at 89-90 (emphasis added). The majority of federal circuits ruling on the issue have concluded that <u>Green Tree</u> does not apply where a claimant seeks to vindicate only state statutory claims, as Gabriel seeks in this case. <u>See</u>, <u>e.g.</u>, <u>Stutler v. T.K. Constructors, Inc.</u>, 448 F.3d 343, 346 (6th Cir. 2006) ("<u>Green Tree</u> . . . [is] limited by [its] plain language to the question of whether an arbitration clause is enforceable where <u>federal</u> statutorily protected rights are affected. In this case, no federally protected interest is at stake.") (emphasis added); <u>Pro Tech Indus., Inc. v. URS Corp.</u>, 377 F.3d 868, 873 (8th Cir. 2004) (noting that <u>Green Tree</u> addresses arbitration of <u>federal</u> statutory claims, not unconscionability of an arbitration agreement under state law); <u>Coneff v. AT&T Corp.</u>, 673 F.3d 1155, 1158 n.2 (9th Cir. 2012) ("<u>Green Tree</u> . .

31

. [is] limited to <u>federal</u> statutory rights.") (emphasis added); but <u>see</u> <u>Kristian v. Comcast Corp.</u>, 446 F.3d 25, 29 (1st Cir. 2006) (finding "provisions of . . . arbitration agreements . . . invalid because they prevent the vindication of statutory rights under state and federal law"); and <u>Booker v. Robert Half Int'l, Inc.</u>, 413 F.3d 77, 79-81 (D.C. Cir. 2005) (applying <u>Green Tree</u> to District of Columbia statutory rights without analysis into whether <u>Green Tree</u> applied only to federal statutory rights).

Assuming arguendo that <u>Green Tree</u> does apply, Gabriel has sufficiently carried her burden of proof:  exhibits and declarations in the record show that arbitration was estimated to cost $20,418.84, that Gabriel would have to remit a $10,200.00 deposit to DPR to arbitrate her claim, that Gabriel made $45,000 annually during the last academic year she worked for IPA, and that Gabriel was without a full-time job, having financial difficulty, and unable to pay for the costs of arbitration.  Unlike the plaintiff in <u>Green Tree</u>, who could only speculate as to the high costs of arbitration, Gabriel has shown precisely what the costs were estimated to be and that such costs were prohibitively expensive for her.  Therefore, we disagree with IPA's assertion that Gabriel presented "nothing but speculation she would incur any arbitration costs."

32

**D.    The circuit court erred in compelling arbitration and ordering IPA to pay for all arbitration costs.**

The circuit court found the cost-splitting requirement unconscionable but nonetheless compelled arbitration and ordered IPA to pay all of the arbitration costs.  On appeal, Gabriel argues that the circuit court should have denied IPA's motion to compel or invalidated the entire arbitration provision.  On cross-appeal, IPA argues that the circuit court was correct in compelling arbitration, but it should have severed the cost-splitting requirement pursuant to the severability clause in the parties' employment agreement instead of conditioning arbitration upon IPA's payment of all arbitration costs.  Gabriel points out, and IPA agrees, that the parties had no intention to allow for the rewriting of the arbitration clause to have IPA pay for the arbitration cost.

We agree that the circuit court improperly modified the parties' arbitration agreement when it attempted to reform the parties' agreement by ordering IPA to pay all arbitration costs. We note that the parties' employment agreement allows modification of the agreement only "in writing, signed by both the Educator and the Head of School and/or his designee, and entitled 'Modification of Contract.'"  As Gabriel argues, neither party sought to modify the arbitration agreement to direct IPA to pay arbitration costs.  The court's order

33

compelling arbitration and directing IPA to pay costs is a result neither party intended, and amounts to a reformation of the arbitration agreement without a firm basis in our precedent to do so. Ordinarily, reformation of a contract is a remedy in the following circumstances:

> Reformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such transaction to writing, either through the mistake of both parties, or through the mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant, the written instrument fails to express the real agreement or transaction.

Kuamu v. Iaukea, 9 Haw. 612, 614 (quoting Pomeroy's Eq. Jur. vol. 2, Sec. 870, p. 344); see also State v. Kahua Ranch, Ltd., 47 Haw. 28, 33, 384 P.2d 581, 585 (1963) (holding that reformation is appropriate where the contract contains a "mutual mistake [that] does not reflect the true intention of the parties. . . ."); Lee v. Aiu, 85 Hawaiʻi 19, 31, 936 P.2d 655, 667 (1997) (noting that reformation of a deed is appropriate to reflect the true intent of the parties, where such intent was incorrectly expressed through mutual mistake or the fraud of the defendant). These circumstances are not present in this case; therefore, the circuit court improperly reformed the arbitration agreement by requiring IPA to pay all arbitration costs.

Further, the circuit court justified its decision to order IPA to pay all arbitration costs by relying on Cole, 105 F.3d 1465, a case that is distinguishable from the instant case. In

34

Cole, the United States Court of Appeals for the D.C. Circuit affirmed the district court's order compelling arbitration of an employee's Title VII claim. 105 F.3d at 1488. Like the instant arbitration agreement, the arbitration agreement at issue in Cole contained no express provision on the payment of fees; rather, it incorporated by reference the AAA's rules. 105 F.3d at 1485. Unlike the instant case, where DPR's rules require cost-splitting, the AAA's rules were silent on the issue of payment of fees and made no provision for reduced or waived fees in case of financial hardship. 105 F.3d at 1469, 1484, 1485. The D.C. Circuit upheld the arbitration agreement but construed the silences within it against the drafter (the employer) in requiring the employer to pay all of the costs of arbitration, as follows:

> In our view, an employee can never be required, as a condition of employment, to pay an arbitrator's compensation in order to secure the resolution of statutory claims under Title VII (any more than an employee can be made to pay a judge's salary). If there is any risk that an arbitration agreement can be construed to require this result, this would surely deter the bringing of arbitration and constitute a de facto forfeiture of the employee's statutory rights. The only way that an arbitration agreement of the sort at issue here can be lawful is if the employer assumes responsibility for the payment of the arbitrator's compensation.

105 F.3d at 1468 (footnote omitted). Thus, Cole stands for the proposition that, where no provision is made for the payment of arbitration costs, and where arbitration of a Title VII claim is compelled in the employment context, an employer can be ordered

35

to bear all arbitration costs.[8]  <u>Cole</u> appears to be an outlier in judicially creating a condition that an employer pay for arbitration costs; other courts address unconscionable arbitration cost provisions by severing offending provisions or invalidating the arbitration agreement altogether.  <u>See</u>, <u>e.g.</u>, <u>Adams</u>, 279 F.3d 889; <u>Ingle</u>, 328 F.3d 1165; <u>Ferguson</u>, 298 F.3d 778 (all applying California contract law).

**E.     The circuit court erred in declining to invalidate the entire arbitration provision.**

The appropriate course for the circuit court was to examine the arbitration agreement as a whole to determine whether parts of it could be severed, or whether the entire arbitration agreement should be invalidated.  Under our case law, in the context of illegal contracts, a partially invalidated agreement may nevertheless be upheld if the invalid provisions are severable from the valid provisions.  <u>See</u>, <u>e.g.</u>, <u>Beneficial Hawaii, Inc. v. Kida</u>, 96 Hawaiʻi 289, 311, 30 P.3d 895, 917 (2001) ("Thus, the general rule is that severance of an illegal provision of a contract is warranted and the lawful portion of the agreement is enforceable when the illegal provision is not central to the parties' agreement and the illegal provision does

---

[8]     <u>Green Tree</u> has called into question <u>Cole</u>'s continuing viability.  In <u>Shatteen v. Omni Hotels Mgmt. Corp.</u>, 113 F.Supp.3d 176, 182 n.3 (D.C.D.C. 2015), the D.C. District Court doubted whether <u>Cole</u> remained good law, noting, "<u>Cole</u>'s holding is, in any event, on shaky ground in light of the Supreme Court's subsequent decision in <u>Green Tree Financial</u>, which eschews any per se ban on fee shifting in the arbitral context."

36

not involve serious moral turpitude, unless such a result is prohibited by statute."); Ai v. Frank Huff Agency, Ltd., 61 Haw. 607, 607 P.2d 1304 (1980), overruled on other grounds by Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Trans. Co., 91 Hawaiʻi 224, 982 P.2d 853 (1999) ("It is well settled under ordinary contract law, however, that a partially illegal contract may be upheld if the illegal portion is severable from the part which is legal.") (citations omitted).

Similarly, in the context of unconscionable contracts, the Restatement (Second) of Contracts § 208 (1981) states, "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." Comment g to the Restatement elaborates, "Where a term rather than the whole contract is unconscionable, the appropriate remedy is ordinarily to deny effect to the unconscionable term."

Other jurisdictions following the Restatement, however, have articulated circumstances under which invalidation of an entire arbitration provision, not just severance of an unconscionable term, is necessary, where no part of the arbitration provision can be spared and given effect. For example, in New Mexico, where an unconscionable provision in an

37

arbitration agreement is "central" to the means by which the parties would arbitrate their claims, severance of the unconscionable provision is not possible, and the entire arbitration agreement must be invalidated.  See Felts v. CLK Mgmt., Inc., 254 P.3d 124, 139 (N.M. 2011).  In Felts, the New Mexico Supreme Court invalidated an entire arbitration agreement due to a substantively unconscionable class action ban that was central to the parties' agreement to arbitrate.  254 P.3d at 140.

Even more similar to this case, the Washington Supreme Court held, "Severance is the usual remedy for substantively unconscionable terms, but where such terms 'pervade' an arbitration agreement, [the Washington courts] refuse to sever those provisions and declare the entire agreement void."  Gandee v. LDL Freedom Enters., Inc., 293 P.3d 1197, 1199-1200 (Wash. 2013) (citation omitted).  In Gandee, the Washington Supreme Court invalidated an entire arbitration agreement due to pervasive substantively unconscionable terms, thereby affirming the denial of a motion to compel arbitration.  293 P.3d at 1203.

In this case, substantively unconscionable terms pervade the arbitration agreement.  Therefore, no part of the arbitration agreement can be spared and given effect.  Again, the entire provision states

> L.  Arbitration.  The parties desire that any dispute concerning the Agreement be handled out of court.

38

> Accordingly, they agree that any such dispute shall, as the parties' sole and exclusive remedy, be submitted to an arbitrator licensed to practice law in the State of Hawaii and selected in accordance with the standard procedures of Dispute Prevention Hawaii [sic]. The arbitrator will not be entitled to add to or subtract from its terms. Should either party start any legal action or administrative proceeding against the other with respect to any claim related to this Agreement, or pursue any method of resolution of a dispute other than mutual agreement of the parties or arbitration, then all damages, costs, expenses and attorneys' fees incurred by the other party as a result shall be the responsibility of the one bringing the suit or starting the proceeding.

The employment agreement contains a severability provision, which states, "Should any provision of this contract be invalidated by a court of law with proper jurisdiction, the remaining provisions shall remain in full force and effect." Although the circuit court did not review each provision in the arbitration agreement for its enforceability, "this court may nonetheless [do so] because unconscionability is a question of law, reviewable de novo." Balogh, 134 Hawaiʻi at 42-43, 332 P.3d at 644-45.

We note that the second sentence in the arbitration provision incorporates, by reference, DPR's cost-splitting rules. The circuit court implicitly found this provision unconscionable, and we agree. The third sentence states, "The arbitrator will not be entitled to add or subtract from its terms." With the second sentence invalidated, there remains no grammatical referent for the "its" in the third sentence, which

39

appears to refer back to the procedures mentioned in the second sentence.  Therefore, the third sentence must be stricken.

We also note that the last sentence in the arbitration agreement (the fee-shifting provision) is obviously unfair.[9]  The fee-shifting provision requires the party challenging arbitration to pay the other party's attorney's fees and costs, solely for challenging the arbitration provision in court, and even if the challenge is meritorious and/or successful.  Under this provision, because Gabriel initiated these proceedings, she would have to pay for all of the "damages, costs, expenses, and attorney's fees" incurred by IPA thus far, simply for challenging the arbitration provision in court, and even though

---

[9]     We note that, at oral argument, IPA's counsel represented that the substance of the fee-shifting provision in the arbitration agreement "was not presented below.  It was not presented in the briefing [before the Hawaiʻi Supreme Court]," and that it was "presented for the first time at oral argument" by this court. http://www.courts.state.hi.us/supreme_court_oa_scap-15-912 at 34:14-27. IPA's counsel went on to represent that he "ha[d]n't even read the clause," because "it wasn't presented at the circuit court and it wasn't presented in briefing before [the Hawaiʻi Supreme Court]." http://www.courts.state.hi.us/supreme_court_oa_scap-15-912 at 52:17-28. IPA's counsel misstates the record.  The fee-shifting provision in the arbitration clause appeared in IPA's briefing before the circuit court and before this court.  In briefing before the circuit court, IPA argued, "The Court should award Defendant's attorneys' fees in bringing this motion because the parties agreed to that as part of the arbitration agreement," and quoted the final sentence of the arbitration agreement.  In briefing before this court, IPA referred specifically to the fee-shifting provision in the point of error regarding the circuit court's denial of an award of fees, as follows:  "Because of the parties' agreement to the party opposing arbitration paying the fees of the party required to compel it, and because of the frivolousness of Gabriel's arguments in opposition to complying with her agreement to arbitrate, the Court should order her to pay the reasonable attorneys' fees incurred by IPA to enforce the parties' agreement to arbitrate Gabriel's claims."  Therefore, the substance of the fee-shifting provision in the arbitration agreement was not raised by this court for the first time at oral argument, and it has been raised throughout these proceedings by IPA itself.

she won this appeal.  This provision is plainly substantively unconscionable and must be stricken as well.  What remains in the arbitration agreement is just the first sentence, which states only, "The parties desire that any dispute concerning the Agreement be handled out of court."  Arbitration is not mentioned in this sentence.  Therefore, the remaining sentence does not clearly evidence the parties' desire to arbitrate their claims.  It cannot serve as a basis for compelling arbitration.  In effect, no part of the arbitration agreement remains.  Consequently, the circuit court erred in compelling arbitration in this case.

**F.    The circuit court did not abuse its discretion in denying IPA's request for attorney's fees and costs.**

This court invalidated the entire arbitration agreement; therefore, the fee-shifting provision within the arbitration agreement cannot serve as the basis for an award of attorney's fees and costs to IPA.  Further, as Gabriel's opposition to IPA's motion to compel was not frivolous, as it legitimately challenged an unconscionable arbitration agreement, an award of attorney's fees and costs was not warranted under the circuit court's inherent power.  Therefore, the circuit court did not abuse its discretion in denying IPA's request for attorney's fees and costs.

## V.  Conclusion

We conclude that (1) this court has jurisdiction over this appeal; (2) the circuit court correctly concluded that the parties entered into a valid arbitration agreement; (3) the cost-splitting requirement in the arbitration agreement is unconscionable; (4) however, the circuit court improperly reformed the arbitration agreement to require IPA to pay all arbitration costs instead of invalidating the entire arbitration agreement; and (5) the circuit court did not abuse its discretion in denying IPA's request for attorney's fees and costs.  Consequently, we vacate the circuit court's order compelling arbitration and remand this case to the circuit court for further proceedings.

Joseph T. Rosenbaum
for plaintiff/appellant-
cross-appellee

Jeffrey S. Harris
for defendant/appellee-
cross-appellant

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

